Anthony P. STEWART, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–04–01041–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 29, 2005.

Janet Seymour Morrow, Spring, TX, for Appellant.

William J. Delmore, III, Chief Prosecutor, Appellate Division, and Charles A. Rosenthal, Jr., District Attorney–Harris County, Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and HIGLEY.

## OPINION

SAM NUCHIA, Justice.

Appellant, Anthony P. Stewart, was charged by indictment with the murder of

William Alexander. A jury found appellant guilty as charged and found that he used or exhibited a deadly weapon during the commission of the offense. The trial court assessed punishment at confinement in prison for 35 years. On appeal, appellant complains that the trial court erred in denying appellant's *Batson*[1] challenge. We affirm.

## BACKGROUND

During voir dire, the prosecutor, after addressing the entire venire regarding the reluctance of some individuals, based on their religious or moral convictions, to sit in judgment of another, questioned jurors 31 and 32 as follows:

[PROSECUTOR]: Anyone else on the second row and of course specifically because of Pastor Davis you believe even though you are a pastor I understand; correct?

VENIREPERSON: Yes.

[PROSECUTOR]: But you believe you can participate and sit in judgment of another?

VENIREPERSON: Sure.

[PROSECUTOR]: Ms. Kim, you are a secretary to the Catholic Charities?

VENIRE PERSON: Yes.

[PROSECUTOR]: Can you also participate and sit in judgment of another?

VENIRE PERSON: Yes, I can.

In her remarks to the venire, the prosecutor, at one point, gave a hypothetical example using jurors 3 and 4. At another point, she asked juror 4 if he understood one of her questions. She also asked juror 4 if he thought his nephew was treated fairly when he was charged with a crime, and the juror responded, "Yes."

After the jury was selected, counsel for appellant made the following *Batson* challenge:

For the record, to establish that Juror No. 37, a black male, and Juror No. 31 is a black male, Juror No. 32 is a black female, Juror No. 4 is a black male. All of these jurors were struck by the Prosecution. And Mr. Stewart is a black. For the record we'd like to get some neutral explanation to say why these jurors were struck.

The State then gave the following explanation:

Both Jurors No. 3 and 4 seemed angry and quick to answer, and I don't know if it's because I used them in my example or not. So I have an uncomfortable feeling with them. And then when Mr. Moncriffe asked the question of had anyone ever gotten a traffic ticket and then who fought it because they were not guilty I actually struck all the people who said they fought because they were not guilty. And that's including No. 3, 4, 6, who was white....

. . . .

Jurors No. 31 and 32, Juror No. 31 is a pastor for 18 years, and Juror No. 32 a secretary for the Catholic Charities. And I did ask them if they could be fair, if they could sit and judge and they did say yes, but I don't feel comfortable putting people whose business tends to forgive people on a criminal jury. That's why I struck those two.

Appellant's counsel made no attempt to rebut the State's explanation. Rather, he simply objected "to the explanation given by the State." The trial court found that the State's reasons were racially neutral and denied appellant's *Batson* challenge. On appeal, appellant complains that the trial court erred in finding that the prose-

---

1. *Batson v. Kentucky*, 476 U.S. 79, 86, 106 S.Ct. 1712, 1717, 90 L.Ed.2d 69 (1986).

cutor's reasons for striking jurors 4, 31, and 32 were racially neutral. Appellant does not complain about the trial court's ruling as to juror 37.

## STANDARD OF REVIEW

When reviewing a trial court's finding with regard to a *Batson* challenge, an appellate court reverses the ruling only if it appears clearly erroneous. *Rhoades v. State*, 934 S.W.2d 113, 123–124 (Tex. Crim.App.1996). In applying this standard, we will not reverse the trial court's ruling unless we have a definite and firm conviction that a mistake has been made. *Id.* We give great deference to the trial court's determination and view the evidence in the light most favorable to the trial court's ruling. *Jasper v. State*, 61 S.W.3d 413, 422 (Tex.Crim.App.2001). If we determine that the State's explanations have not been rebutted by the appellant, we will deem the trial court's ruling that there was no purposeful discrimination on the basis of race as not clearly erroneous. *Williams v. State*, 804 S.W.2d 95, 101 (Tex. Crim.App.1991).

## DISCUSSION

In his first point of error, appellant complains that the trial court erred in ruling that the prosecutor's explanations of his strikes of jurors 31 and 32 were racially neutral because the prosecutor failed to sufficiently question their participation in the "forgiveness business." In his second point of error, appellant complains that the trial court erred in ruling that the prosecutor's explanations of its strike of juror 4 was racially neutral because the prosecutor incited a negative reaction from him and failed to sufficiently question him. Because both points of error complain of the trial court's *Batson* ruling, we discuss the points together.

Using a peremptory challenge based on a juror's race violates equal protection under the United States Constitution. *Batson v. Kentucky*, 476 U.S. 79, 86, 106 S.Ct. 1712, 1717, 90 L.Ed.2d 69 (1986). In the face of perceived purposeful discrimination, the defendant may request a *Batson* hearing. The hearing involves a three-step process. *Purkett v. Elem*, 514 U.S. 765, 767–68, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834 (1995). First, the defendant must make a prima facie case of racial discrimination. *Id.*, 514 U.S. at 767, 115 S.Ct. at 1770. Then, the burden of production shifts to the state to present a racially neutral explanation for its challenged strike. *Id.*, 514 U.S. at 768, 115 S.Ct. at 1771. Finally, the trial court must decide whether the defendant has established purposeful discrimination. *Id.; see also Miller–El v. Dretke*, —— U.S. ——, 125 S.Ct. 2317, 2324, 162 L.Ed.2d 196 (2005). Throughout the challenge, however, the burden of persuasion remains with the defendant, who has the opportunity to rebut the explanations prior to the trial court's decision. *Jasper*, 61 S.W.3d at 421; *see also Purkett*, 514 U.S. at 768, 115 S.Ct. at 1771.

In *Keeton v. State*, the Court of Criminal appeals enumerated five nonexclusive factors that may be used in analyzing a *Batson* challenge. *Keeton v. State*, 749 S.W.2d 861, 866 (Tex.Crim.App.1988). Appellant contends, with respect to jurors 31 and 32, that one of those factors—an explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically—applies to this case. *See id.* The State responds that *Keeton* is no longer good law because it has been supplanted by *Purkett.*

The court in *Keeton*, considering a case of first impression, relied on case law out of Florida and Alabama to determine the role of the trial judge in ruling on a *Batson*

challenge. *Id.* at 865–67 (citing *Slappy v. State,* 503 So.2d 350 (Fla.Dist.Ct.App.1987) and *Ex parte Branch,* 526 So.2d 609 (Ala. 1987)). The Florida and Alabama courts listed five factors that could be used in a *Batson* analysis, and the *Keeton* court approved that concept. *Id.* at 868.

The Supreme Court, in *Purkett,* made it clear that the trial court's analysis of the State's justification of its use of peremptory strikes occurs at the third step of the *Batson* process and that the burden of persuasion regarding racial motivation never shifts from the defendant. *Purkett,* 514 U.S. at 768, 115 S.Ct. at 1771. The Court also clarified that the reasons offered by the State do not have to be persuasive, or even plausible, to meet the State's burden of production, as long as they are racially neutral. *Id.* We do not read *Purkett* as rendering *Keeton* bad law. There is nothing in *Purkett* to suggest that the five factors stated in *Keeton, Slappy,* and *Branch* may no longer be used in the trial court's analysis at the third step of the *Batson* challenge.

In this case, appellant made a *Batson* challenge to some of the State's peremptory strikes. The State offered a racially neutral explanation for those strikes. Appellant did not attempt to rebut the State's explanation or to carry his burden of persuasion by asserting, as he does on appeal, that the State did not show that the usual traits of the "forgiveness business" applied to jurors 31 and 32 or that the State antagonized juror 4. The trial court then found the State's explanation to be racially neutral and denied the *Batson* challenge.

In light of appellant's failure to offer any rebuttal of the State's reasons for striking jurors 4, 31, and 32, we cannot say that the trial court's ruling was clearly erroneous. *Williams,* 804 S.W.2d at 101; *see also Whitsey v. State,* 796 S.W.2d 707, 726 (Tex. Crim.App.1989) (noting appellant's rebut-

tal of prosecutor's proffered explanation for his peremptory strikes).

Accordingly, we overrule appellant's first and second points of error and affirm the judgment.