SIMMONS V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NOS.  2-05-172-CR

         2-05-173-CR

DONALD R. SIMMONS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

This is a murder-for-hire case.  Gunmen shot and wounded Sonny Alaniz and killed Benito Sanchez outside Sanchez’s apartment.  A jury convicted Appellant Donald R. Simmons for capital murder and attempted capital murder for hiring the gunmen to kill Alaniz.  Appellant received an automatic life sentence for Sanchez’s death, and the jury sentenced him to seventy years’ confinement for the Alaniz shooting.  We affirm.

Background

Sonny Alaniz and Leteshia Barnett, one of Appellant
’s girlfriends, both testified at trial that Appellant and Alaniz did substantial drug deals together.  Alaniz testified that he sold one hundred pounds of marijuana to Appellant every few days for $40,000 per one hundred pounds.  Barnett testified that Appellant complained that Alaniz was overcharging him for the marijuana and that Appellant said in May 2000 that he intended to hire Leon Walker and Walker’s “homeboy” to kill Alaniz for $7,000.  Barnett identified Djuan Gipson as Walker’s “homeboy” from a photo line-up.  

Harry Paramore testified that on the evening of May 16, 2000, he was installing a radio in his car in the parking lot of his Arlington apartment complex when he saw a small car back into a nearby parking space.  Two black men got out of the car and walked through an alleyway that separated two apartment buildings.  Renea Roberts, another resident of the same apartment complex, testified that she was returning to her apartment with her children when she saw two black men sitting on the stairs leading to her apartment.  As she closed her door after entering her apartment, she heard a gun shot and saw a muzzle flash outside her door.  She slammed the door and called 9-1-1.  Paramore testified that he heard several gunshots from two weapons of different caliber.  When the shooting stopped, he saw the same two black men, one holding a pistol, walk quickly back through the alley, get into their car, and speed away.  Paramore went through the alleyway and saw a Hispanic man lying on the ground with bullet holes in his body. 

Alaniz testified that he and Sanchez were leaving Sanchez’s apartment  when Alaniz heard someone say, “That’s him.”  Alaniz turned toward the apartment stairs and saw two black men holding guns.  The men started to shoot, and Alaniz told Sanchez to run.  A bullet hit Alaniz, and he fell to the ground.  Sanchez ran back to Alaniz and was shot in the leg.  Alaniz ducked back into the apartment and heard another ten shots fired outside the apartment.  When he came out of the apartment again, police had arrived and Sanchez was dead.  On cross-examination, Alaniz admitted that he told police that he wanted them to prosecute a man named “Ken” for shooting him and Sanchez and that he had identified “Ken” as the shooter from a photo line-up. 

Cassius Brown, a friend of Appellant’s, testified that when he was visiting Appellant in Appellant’s apartment, Appellant opened a kitchen drawer, pulled out a newspaper clipping that described the shooting death of a Hispanic man in an Arlington apartment complex, and said he had “done it.”  Brown testified that Appellant told him that he committed the crime because he “owed the Mexican guy a large amount of money for some marijuana.”  Appellant told Brown that a man named Leon was involved. 

Jason Gehring testified that he knew Appellant, Walker, and Gipson.  He said that in May of 2000, he was riding motorcycles with Gipson and Walker.  When they stopped to buy gas for their motorcycles, said Gehring, he overheard a conversation between Walker and Gipson.  According to Gehring, Gipson told Walker that Appellant said they “had shot the wrong Mexican guy.” 

Terrence Holiman testified that he was once confined in the Tarrant County Jail with Leon Walker.  Holiman said that Walker told him that Appellant paid Walker to kill “some Mexicans” at an Arlington apartment to whom Appellant owed money. 

The defense called Leon Walker to testify.  Walker had previously pleaded guilty to the shootings and was serving a forty-year prison sentence.
(footnote: 2)  Walker claimed that he went with “Mike” to confront “the Mexican” about “why is he giving me this counterfeit money, and then I wanted to talk to him about why we was getting bad dope.”  Walker testified that when he confronted “the Mexican” outside his apartment, “the Mexican’s” companion drew a pistol. Walker said that he drew two pistols of his own and shot both men.  He claimed that Appellant did not command or pay him to do anything.  But Walker admitted that he had signed a judicial confession in which he admitted that he committed the shootings with Appellant’s “voluntary and intentional aid, assistance, or encouragement.”  He admitted that he had never told anyone the version of the facts he recited at trial.  Walker could not explain why—if he was buying drugs from Alaniz as he claimed—Alaniz was passing him counterfeit money. 

Batson
 Challenge

In his first point, Appellant argues that the trial court erred during jury selection by overruling Appellant’s 
Batson
 challenge to one of the State’s peremptory strikes.  
See Batson v. Kentucky
, 476 U.S. 79, 106 S. Ct. 1712 (1986).  

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits race-based jury selection.  
Jasper v. State
, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001).  When reviewing a trial court’s finding with regard to a 
Batson 
challenge, an appellate court reverses the ruling only if it appears clearly erroneous.  
Stewart v. State
, 176 S.W.3d 856, 858 (Tex. App.སྭHouston [1st Dist.] 2005, no pet.); 
see Rhoades v. State
, 934 S.W.2d 113, 123 (Tex. Crim. App. 1996).  Because a trial court is in a unique position to make such a determination, the judge’s decision is accorded great deference.  
Jasper
, 61 S.W.3d at 421; 
Ladd v. State
, 3 S.W.3d 547, 563 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1070 (2000).  

Once a party raises a 
Batson 
challenge, the trial court must engage in a three-step inquiry.  First, the defendant must make a prima facie showing of racial discrimination and thus carries a burden of production.  
Peetz v. State
, 180 S.W.3d 755, 758 (Tex. App.སྭHouston [14th Dist.] 2005, no pet.); 
see Ford v. State
, 1 S.W.3d 691, 693 (Tex. Crim. App. 1999).  Second, the burden of production shifts to the State to present a racially neutral explanation for its challenged strike.
  Stewart
, 176 S.W.3d at 858.  Third, the defendant has the burden to show that the explanation given was merely a pretext for discrimination.  
Johnson v. State,
 68 S.W.3d 644, 649 (Tex. Crim. App. 2002).  It is not enough merely to show that a proffered explanation turns out to be incorrect.  
Id.  
A party’s failure to offer any real rebuttal to a proffered race neutral explanation can be fatal to his claim.  
Id.
  The trial judge rules on whether the neutral reasons given for the peremptory challenge were contrived to conceal racially discriminatory intent. 
 Jasper
, 61 S.W.3d at 421; 
Stewart
, 176 S.W.3d at 858. 

Here, the State struck venireperson Shirlan Felder, who is black.  Appellant raised a 
Batson
 challenge to the strike.  The State noted that of the five black venirepersons, two were seated on the jury.  The State offered the following race-neutral reasons for striking Felder, most derived from her answers to the jury questionnaire: she has a sister who is incarcerated; she has had an unpleasant experience with police; she appeared to have difficulty staying awake at times during the two-day voir dire; her son works in the Tarrant County jail, where many of the State’s witnesses were incarcerated at the time of trial; and she is a Seventh Day Adventist.  The prosecutor explained that Felder’s religious affiliation was significant because Seventh Day Adventists “at times have difficulty judging others.”  In response, Appellant’s counsel noted that the State had not exercised strikes against two other venirepersons with incarcerated relatives or another venireperson who said he might have a problem judging someone else.  Counsel also stated that he had a clear view of Felder and did not see her nodding off.  Finally, counsel argued that “the bottom line” of Appellant’s 
Batson 
challenge was that the State struck Felder without asking her “one single question[.]  And that’s why we contend that they don’t have a race-neutral reason for striking her.  They didn’t ask.”  The trial court overruled Appellant’s 
challenge. 

We hold that the trial court’s ruling on Appellant’s 
Batson
 challenge was not clearly erroneous.  The State offered race-neutral explanations for striking Felder, and Appellant failed to show that the State’s stated explanations were mere pretexts.  
With regard to the State’s failure to ask any oral questions of Felder, we have previously held that a veniremember’s answers on a jury questionnaire can provide a race-neutral reason to strike the veniremember.  
See
 
Cuestas v. State,
 933 S.W.2d 731, 733 (Tex. App.—Fort Worth 1996, no pet.).  We therefore overrule Appellant’s first point.

Disjunctive Jury Charge

In his second point, Appellant argues that the trial court erred by charging the jury in the disjunctive as to whom Appellant hired to murder Alaniz.  The charge regarding Sanchez’s slaying stated:

[I]f you find . . . that the Defendant . . . did then and there intentionally cause the death of an individual, Benito Sanchez, by shooting him with a firearm, 
by employing Winifred Leon Walker 
for remuneration . . . to murder Sonny Alaniz, as charged in Paragraph One of the Indictment; 
or
 if you find . . . that the Defendant . . . did then and there intentionally cause the death of an individual, Benito Sanchez, by shooting him with a firearm,
 by employing Djuan Gipson 
for remuneration . . . to murder Sonny Alaniz, as charged in Paragraph Two of the Indictment, then you will find the Defendant guilty of capital murder. [Emphasis added]

The charge in the case stemming from the attempted murder of Alaniz contained similar disjunctive language.  Appellant argues that the charges allowed the jury to convict him without a unanimous verdict; that is, some jurors could have believed that Appellant hired Walker to kill Alaniz, and other jurors could have believed that he hired Gipson.

A jury verdict in a criminal case must be unanimous.  
Tex. Const.
 art. V, § 13.  A unanimous verdict ensures that the jury agrees on the factual elements underlying an offenseསྭit is more than mere agreement on a violation of a statute.  
Francis v. State
, 36 S.W.3d 121, 125 (Tex. Crim App. 2000)
.  A trial court may submit a disjunctive jury charge and obtain a general verdict where the alternate theories involve the commission of the “same offense.”
  Finster v. State, 
152 S.W.3d 215, 218 (Tex. App.—Dallas 2004, no pet.).  If an indictment alleges different methods of committing the 
same
 offense in the conjunctive (“and”), it is not improper to submit the different methods to the jury in the disjunctive (“or”).  
Kitchens v. State
, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991), 
cert. denied
, 504 U.S. 958 (1992).

Here, the indictment in each case alleged, in the conjunctive, different methods of committing the same offense; that is, each indictment alleged that Appellant hired Walker to kill Alaniz and that he hired Gipson to kill Alaniz.  Therefore, the trial court did not err by charging the jury in the disjunctive with alternative theories involving the commission of the same offense, and we overrule Appellant’s second point.

Specific Intent

In his third point, which relates to the capital murder case only, Appellant argues that the trial court erred by failing to charge the jury that they must find that Appellant had the specific intent to kill Sonny Alaniz before they could find Appellant guilty.  Appellant contends that the case was submitted to the jury on the law of parties and that a jury may not convict a defendant under the law of parties unless it finds beyond a reasonable doubt that the defendant harbored the specific intent to promote or assist the commission of the offense.

We reject Appellant’s argument for two reasons.  First, his argument is based on the mistaken idea that the case was submitted to the jury on the law of parties.  In fact, the charge says nothing about the law of parties.  Second, and again contrary to Appellant’s argument, the charge incorporated specific intent.  We set out the charge’s application paragraph in the previous section of this opinion.  The pertinent part of the charge states that the jury must find that Appellant employed Walker or Gipson to murder Alaniz.  The charge also defines “murder” and “capital murder”:  “A person commits the offense of murder if he intentionally causes the death of an individual.  A person commits the offense of capital murder if he commits murder . . . and the person employs another to commit the murder for remuneration or the promise of remuneration.”  Thus, the charge informed the jury that it had to find that Appellant intended to cause Alaniz’s death by employing Walker or Gipson to kill Alaniz before they could find Appellant guilty of capital murder.  We therefore overrule Appellant’s third point.

Factual Sufficiency

In his fourth point, Appellant argues that the evidence is factually insufficient to show that Appellant hired Djuan Gipson to attempt or commit capital murder.  Appellant does not contest the factual sufficiency of the evidence to show that he hired Leon Walker to attempt or commit capital murder.

We turn to 
Kitchens v. State
 for guidance.  In
 Kitchens, 
the indictment charged the appellant with alternative means of committing capital murder: murder in the course of aggravated sexual assault and murder in the course of robbery.  
Kitchens
, 823 S.W.2d at 257.  As in this case, the indictment in 
Kitchens
 stated the alternative means in the conjunctive, but the jury charge stated them in the disjunctive.  
Id.
   The appellant argued that the evidence was legally insufficient to prove murder in the course of aggravated sexual assault, but did not challenge the sufficiency of the evidence to prove murder in the course of robbery.  
Id.
 at 259.  The court of criminal appeals noted that “[I]t is settled that ‘when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, . . . the verdict stands if the evidence is sufficient with respect to any of the acts charged.’” 
Id.
 at 259 (quoting 
Turner v. United State
s, 396 U.S. 398, 420, 90 S. Ct. 642, 654 (1970)).  “Thus, the State need prove only one of the underlying offenses charged in the indictment  in order to support the conviction[.]” 
 Id
.  Because the appellant did not challenge the sufficiency of the evidence to support both of the alternative means alleged in the indictment, the court of criminal appeals overruled without further consideration his challenge to the sufficiency of the evidence with regard to murder in the course of aggravated sexual assault.  
Id.

In this case, Appellant challenges the factual sufficiency of the evidence to support his conviction for hiring Gipson to murder Alaniz, but does not challenge the factual sufficiency of the evidence to support his conviction for hiring Walker.  The State needed to prove only that he hired Gipson or that he hired Walker.  Because Appellant does not challenge the factual sufficiency of the evidence to support his conviction for hiring Walker, his challenge with regard to Gipson is moot.  We acknowledge that 
Kitchens
 involved a challenge to the legal sufficiency, rather than the factual sufficiency, of the evidence, but that distinction does not compel a different analysis or conclusion.  We therefore overrule Appellant’s fourth point.

Jury Misconduct

In his fifth point, Appellant argues that the trial court erred by failing to grant a mistrial based on jury misconduct.  During its deliberations on guilt/innocence, the jury sent out a note asking who would decide punishment.  The trial court advised the jury that he could not answer its question and instructed the jury to confine its deliberations to the evidence and the court’s charge.  Appellant moved for a mistrial, and the trial court denied his motion. 
We review the denial of a motion for mistrial under an abuse of discretion standard.
  Wead v. State
, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).

A movant for a mistrial based on jury misconduct must prove that (1) misconduct occurred, and (2) the misconduct resulted in harm to the movant. 
Garza v. State
, 630 S.W.2d 272, 274 (Tex. Crim. App. 1981).  As a general rule, jurors are prohibited from considering punishment during deliberations on guilt/innocence.  
Simmons v. State
, 156 Tex. Crim. 153, 239 S.W.2d 625, 627 (1951).  But to warrant reversal, the jurors must have agreed to “render a guilty verdict in exchange for a lighter punishment.”  
Vorwerk v. State
, 735 S.W.2d 672, 674 (Tex. App.—Austin 1987, pet. ref’d.).  Discussion of punishment without any kind of an agreement is not sufficient to warrant reversal for jury misconduct.  
See Daniels v. State
, 600 S.W.2d 813, 816 (Tex. Crim. App. [Panel Op.] 1980).

In this case, the only evidence of jury misconduct is the jury’s note asking who would assess punishment.  While the note suggests that the jurors improperly discussed punishment during guilt/innocence deliberations, there is no evidence of an agreement of the kind necessary to warrant reversal.  Nor has Appellant demonstrated any harm.  We therefore overrule his fifth point.

Judicial Notice of Limitations

In his sixth point, Appellant argues that the trial court erred by instructing the jury that the court had taken judicial notice of the date of the indictments and that there is no statute of limitations for the offenses of capital murder and attempted capital murder.  Appellant argues that the instruction was unnecessary and constituted an improper comment on the weight of the evidence.

As his sole authority in support of this point, Appellant cites 
Hoang v. State
, 939 S.W.2d 593, 594-98 (Tex. Crim. App. 1996).  In 
Hoang
, the court of criminal appeals noted that “[w]hen an indictment on its face clearly alleges an offense committed within the applicable statute of limitations, the issue is not raised and the trial court need not instruct the jury.”  
Id.
 (citing 
Vincent v. State
, 10 Tex. App. 330, 333 (1881)).  The State argues that the words, 
“need not 
instruct the jury” do not mean “
must not 
instruct the jury” with regard to limitations.  We agree and conclude that 
Hoang
 does not support Appellant’s argument.  Appellant concedes that the instruction was accurate because there is no limitation for the offenses of capital murder and attempted capital murder.  He does not explain how the trial court’s instruction left “the jury with the impression that the court is assisting the State in getting a conviction,” as he argues in his brief, and the possibility of such an impression seems so remote as to be utterly insignificant.  We therefore overrule Appellant’s sixth point.

Conclusion

Having overruled all six of Appellant’s points, we affirm the trial court’s judgments.

ANNE GARDNER

JUSTICE

PANEL A: CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:
  July 20, 2006

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
We note that Alaniz, Barnett, Brown, Gehring, and Holiman were also serving state or federal prison sentences for various crimes at the time of trial.