COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                       NOS.
 2-05-172-CR

                                                2-05-173-CR

 

 

DONALD R. SIMMONS                                                          APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 371ST DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








This is a murder-for-hire
case.  Gunmen shot and wounded Sonny
Alaniz and killed Benito Sanchez outside Sanchez=s apartment.  A jury convicted
Appellant Donald R. Simmons for capital murder and attempted capital murder for
hiring the gunmen to kill Alaniz. 
Appellant received an automatic life sentence for Sanchez=s death, and the jury sentenced him to seventy years= confinement for the Alaniz shooting. 
We affirm.

                                            Background

Sonny Alaniz and Leteshia
Barnett, one of Appellant=s
girlfriends, both testified at trial that Appellant and Alaniz did substantial
drug deals together.  Alaniz testified
that he sold one hundred pounds of marijuana to Appellant every few days for
$40,000 per one hundred pounds.  Barnett
testified that Appellant complained that Alaniz was overcharging him for the
marijuana and that Appellant said in May 2000 that he intended to hire Leon
Walker and Walker=s Ahomeboy@ to kill
Alaniz for $7,000.  Barnett identified
Djuan Gipson as Walker=s Ahomeboy@ from a
photo line-up.  








Harry Paramore testified that
on the evening of May 16, 2000, he was installing a radio in his car in the
parking lot of his Arlington apartment complex when he saw a small car back
into a nearby parking space.  Two black
men got out of the car and walked through an alleyway that separated two
apartment buildings.  Renea Roberts,
another resident of the same apartment complex, testified that she was
returning to her apartment with her children when she saw two black men sitting
on the stairs leading to her apartment. 
As she closed her door after entering her apartment, she heard a gun
shot and saw a muzzle flash outside her door. 
She slammed the door and called 9-1-1. 
Paramore testified that he heard several gunshots from two weapons of
different caliber.  When the shooting
stopped, he saw the same two black men, one holding a pistol, walk quickly back
through the alley, get into their car, and speed away.  Paramore went through the alleyway and saw a
Hispanic man lying on the ground with bullet holes in his body. 

Alaniz testified that he and
Sanchez were leaving Sanchez=s apartment  when Alaniz heard
someone say, AThat=s him.@  Alaniz turned toward the apartment stairs and
saw two black men holding guns.  The men
started to shoot, and Alaniz told Sanchez to run.  A bullet hit Alaniz, and he fell to the
ground.  Sanchez ran back to Alaniz and was
shot in the leg.  Alaniz ducked back into
the apartment and heard another ten shots fired outside the apartment.  When he came out of the apartment again,
police had arrived and Sanchez was dead. 
On cross-examination, Alaniz admitted that he told police that he wanted
them to prosecute a man named AKen@ for
shooting him and Sanchez and that he had identified AKen@ as the
shooter from a photo line-up. 








Cassius Brown, a friend of
Appellant=s, testified
that when he was visiting Appellant in Appellant=s apartment, Appellant opened a kitchen drawer, pulled out a newspaper
clipping that described the shooting death of a Hispanic man in an Arlington
apartment complex, and said he had Adone it.@  Brown testified that Appellant told him that
he committed the crime because he Aowed the Mexican guy a large amount of money for some marijuana.@  Appellant told Brown that a
man named Leon was involved. 

Jason Gehring testified that
he knew Appellant, Walker, and Gipson. 
He said that in May of 2000, he was riding motorcycles with Gipson and
Walker.  When they stopped to buy gas for
their motorcycles, said Gehring, he overheard a conversation between Walker and
Gipson.  According to Gehring, Gipson
told Walker that Appellant said they Ahad shot the wrong Mexican guy.@ 

Terrence Holiman testified
that he was once confined in the Tarrant County Jail with Leon Walker.  Holiman said that Walker told him that
Appellant paid Walker to kill Asome Mexicans@ at an
Arlington apartment to whom Appellant owed money. 








The defense called Leon
Walker to testify.  Walker had previously
pleaded guilty to the shootings and was serving a forty-year prison sentence.[2]  Walker claimed that he went with AMike@ to confront
Athe Mexican@ about Awhy is he giving me this counterfeit money, and then I wanted to talk
to him about why we was getting bad dope.@  Walker testified that when he
confronted Athe Mexican@ outside his apartment, Athe Mexican=s@ companion drew a pistol. Walker said that he drew two pistols of his
own and shot both men.  He claimed that
Appellant did not command or pay him to do anything.  But Walker admitted that he had signed a
judicial confession in which he admitted that he committed the shootings with
Appellant=s Avoluntary and intentional aid, assistance, or encouragement.@  He admitted that he had never
told anyone the version of the facts he recited at trial.  Walker could not explain whyCif he was buying drugs from Alaniz as he claimedCAlaniz was passing him counterfeit money. 

Batson Challenge

In his first point, Appellant
argues that the trial court erred during jury selection by overruling Appellant=s Batson challenge to one of the State=s peremptory strikes.  See
Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986).  








The Equal Protection Clause
of the Fourteenth Amendment to the United States Constitution prohibits
race-based jury selection.  Jasper v.
State, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001).  When reviewing a trial court=s finding with regard to a Batson challenge, an appellate court
reverses the ruling only if it appears clearly erroneous.  Stewart v. State, 176 S.W.3d 856, 858
(Tex. App._Houston [1st Dist.] 2005, no pet.); see Rhoades v. State, 934
S.W.2d 113, 123 (Tex. Crim. App. 1996). 
Because a trial court is in a unique position to make such a
determination, the judge=s decision
is accorded great deference.  Jasper,
61 S.W.3d at 421; Ladd v. State, 3 S.W.3d 547, 563 (Tex. Crim. App.
1999), cert. denied, 529 U.S. 1070 (2000).  

Once a party raises a Batson
challenge, the trial court must engage in a three-step inquiry.  First, the defendant must make a prima facie
showing of racial discrimination and thus carries a burden of production.  Peetz v. State, 180 S.W.3d 755, 758
(Tex. App._Houston [14th Dist.] 2005, no pet.); see Ford v. State, 1
S.W.3d 691, 693 (Tex. Crim. App. 1999). 
Second, the burden of production shifts to the State to present a
racially neutral explanation for its challenged strike.  Stewart, 176 S.W.3d at 858.  Third, the defendant has the burden to show
that the explanation given was merely a pretext for discrimination.  Johnson v. State, 68 S.W.3d 644, 649
(Tex. Crim. App. 2002).  It is not enough
merely to show that a proffered explanation turns out to be incorrect.  Id. 
A party=s failure to
offer any real rebuttal to a proffered race neutral explanation can be fatal to
his claim.  Id.  The trial judge rules on whether the neutral
reasons given for the peremptory challenge were contrived to conceal racially
discriminatory intent.  Jasper, 61
S.W.3d at 421; Stewart, 176 S.W.3d at 858. 








Here, the State struck
venireperson Shirlan Felder, who is black. 
Appellant raised a Batson challenge to the strike.  The State noted that of the five black
venirepersons, two were seated on the jury. 
The State offered the following race-neutral reasons for striking
Felder, most derived from her answers to the jury questionnaire: she has a
sister who is incarcerated; she has had an unpleasant experience with police;
she appeared to have difficulty staying awake at times during the two-day voir
dire; her son works in the Tarrant County jail, where many of the State=s witnesses were incarcerated at the time of trial; and she is a
Seventh Day Adventist.  The prosecutor
explained that Felder=s religious
affiliation was significant because Seventh Day Adventists Aat times have difficulty judging others.@  In response, Appellant=s counsel noted that the State had not exercised strikes against two
other venirepersons with incarcerated relatives or another venireperson who
said he might have a problem judging someone else.  Counsel also stated that he had a clear view
of Felder and did not see her nodding off. 
Finally, counsel argued that Athe bottom line@ of
Appellant=s Batson challenge
was that the State struck Felder without asking her Aone single question[.]  And that=s why we contend that they don=t have a race-neutral reason for striking her.  They didn=t ask.@  The trial court overruled Appellant=s challenge. 








We hold that the trial court=s ruling on Appellant=s Batson challenge was not clearly erroneous.  The State offered race-neutral explanations for
striking Felder, and Appellant failed to show that the State=s stated explanations were mere pretexts.  With regard to the State=s failure to ask any oral questions of Felder, we have previously held
that a veniremember=s answers on
a jury questionnaire can provide a race-neutral reason to strike the
veniremember.  See Cuestas v.
State, 933 S.W.2d 731, 733 (Tex. App.CFort Worth 1996, no pet.).  We
therefore overrule Appellant=s first point.

Disjunctive Jury Charge

In his second point,
Appellant argues that the trial court erred by charging the jury in the
disjunctive as to whom Appellant hired to murder Alaniz.  The charge regarding Sanchez=s slaying stated:

[I]f
you find . . . that the Defendant . . . did then and there intentionally cause
the death of an individual, Benito Sanchez, by shooting him with a firearm, by
employing Winifred Leon Walker for remuneration . . . to murder Sonny
Alaniz, as charged in Paragraph One of the Indictment; or
if you find . . . that the Defendant . . . did then and there intentionally
cause the death of an individual, Benito Sanchez, by shooting him with a
firearm, by employing Djuan Gipson for remuneration . . . to murder
Sonny Alaniz, as charged in Paragraph Two of the Indictment, then you will find
the Defendant guilty of capital murder. [Emphasis added]

 

The charge in the case stemming from the
attempted murder of Alaniz contained similar disjunctive language.  Appellant argues that the charges allowed the
jury to convict him without a unanimous verdict; that is, some jurors could
have believed that Appellant hired Walker to kill Alaniz, and other jurors
could have believed that he hired Gipson.








A jury verdict in a criminal
case must be unanimous.  Tex. Const. art. V, ' 13.  A unanimous verdict
ensures that the jury agrees on the factual elements underlying an offense_it is
more than mere agreement on a violation of a statute.  Francis v. State, 36 S.W.3d 121, 125
(Tex. Crim App. 2000).  A trial court may
submit a disjunctive jury charge and obtain a general verdict where the
alternate theories involve the commission of the Asame offense.@  Finster v. State, 152 S.W.3d 215, 218 (Tex. App.CDallas 2004, no pet.).  If an
indictment alleges different methods of committing the same offense in
the conjunctive (Aand@), it is not improper to submit the different methods to the jury in
the disjunctive (Aor@).  Kitchens v. State,
823 S.W.2d 256, 258 (Tex. Crim. App. 1991), cert. denied, 504 U.S. 958
(1992).

Here, the indictment in each
case alleged, in the conjunctive, different methods of committing the same
offense; that is, each indictment alleged that Appellant hired Walker to kill
Alaniz and that he hired Gipson to kill Alaniz. 
Therefore, the trial court did not err by charging the jury in the
disjunctive with alternative theories involving the commission of the same
offense, and we overrule Appellant=s second point.

                                           Specific Intent








In his third point, which
relates to the capital murder case only, Appellant argues that the trial court
erred by failing to charge the jury that they must find that Appellant had the
specific intent to kill Sonny Alaniz before they could find Appellant guilty.  Appellant contends that the case was
submitted to the jury on the law of parties and that a jury may not convict a
defendant under the law of parties unless it finds beyond a reasonable doubt
that the defendant harbored the specific intent to promote or assist the
commission of the offense.

We reject Appellant=s argument for two reasons. 
First, his argument is based on the mistaken idea that the case was
submitted to the jury on the law of parties. 
In fact, the charge says nothing about the law of parties.  Second, and again contrary to Appellant=s argument, the charge incorporated specific intent.  We set out the charge=s application paragraph in the previous section of this opinion.  The pertinent part of the charge states that
the jury must find that Appellant employed Walker or Gipson to murder
Alaniz.  The charge also defines Amurder@ and Acapital murder@:  AA person commits the offense of murder if he intentionally causes the
death of an individual.  A person commits
the offense of capital murder if he commits murder . . . and the person employs
another to commit the murder for remuneration or the promise of remuneration.@  Thus, the charge informed the
jury that it had to find that Appellant intended to cause Alaniz=s death by employing Walker or Gipson to kill Alaniz before they could
find Appellant guilty of capital murder. 
We therefore overrule Appellant=s third point.








                                        Factual Sufficiency

In his fourth point,
Appellant argues that the evidence is factually insufficient to show that
Appellant hired Djuan Gipson to attempt or commit capital murder.  Appellant does not contest the factual
sufficiency of the evidence to show that he hired Leon Walker to attempt or
commit capital murder.








We turn to Kitchens v.
State for guidance.  In Kitchens, the
indictment charged the appellant with alternative means of committing capital
murder: murder in the course of aggravated sexual assault and murder in the
course of robbery.  Kitchens, 823
S.W.2d at 257.  As in this case, the indictment
in Kitchens stated the alternative means in the conjunctive, but the
jury charge stated them in the disjunctive. 
Id.   The appellant argued
that the evidence was legally insufficient to prove murder in the course of
aggravated sexual assault, but did not challenge the sufficiency of the
evidence to prove murder in the course of robbery.  Id. at 259.  The court of criminal appeals noted that A[I]t is settled that >when a jury returns a guilty verdict on an indictment charging several
acts in the conjunctive, . . . the verdict stands if the evidence is sufficient
with respect to any of the acts charged.=@ Id. at 259 (quoting Turner v. United States, 396 U.S.
398, 420, 90 S. Ct. 642, 654 (1970)).  AThus, the State need prove only one of the underlying offenses charged
in the indictment  in order to support
the conviction[.]@  Id. 
Because the appellant did not challenge the sufficiency of the evidence
to support both of the alternative means alleged in the indictment, the court
of criminal appeals overruled without further consideration his challenge to
the sufficiency of the evidence with regard to murder in the course of
aggravated sexual assault.  Id.

In this case, Appellant
challenges the factual sufficiency of the evidence to support his conviction
for hiring Gipson to murder Alaniz, but does not challenge the factual
sufficiency of the evidence to support his conviction for hiring Walker.  The State needed to prove only that he hired
Gipson or that he hired Walker.  Because
Appellant does not challenge the factual sufficiency of the evidence to support
his conviction for hiring Walker, his challenge with regard to Gipson is
moot.  We acknowledge that Kitchens
involved a challenge to the legal sufficiency, rather than the factual
sufficiency, of the evidence, but that distinction does not compel a different
analysis or conclusion.  We therefore
overrule Appellant=s fourth
point.

                                         Jury Misconduct








In his fifth point, Appellant
argues that the trial court erred by failing to grant a mistrial based on jury
misconduct.  During its deliberations on
guilt/innocence, the jury sent out a note asking who would decide punishment.  The trial court advised the jury that he could
not answer its question and instructed the jury to confine its deliberations to
the evidence and the court=s charge.  Appellant moved for a
mistrial, and the trial court denied his motion. We review the denial of a
motion for mistrial under an abuse of discretion standard.  Wead v. State, 129 S.W.3d 126, 129 (Tex.
Crim. App. 2004).

A movant for a mistrial based
on jury misconduct must prove that (1) misconduct occurred, and (2) the
misconduct resulted in harm to the movant. Garza v. State, 630 S.W.2d
272, 274 (Tex. Crim. App. 1981).  As a
general rule, jurors are prohibited from considering punishment during
deliberations on guilt/innocence.  Simmons
v. State, 156 Tex. Crim. 153, 239 S.W.2d 625, 627 (1951).  But to warrant reversal, the jurors must have
agreed to Arender a
guilty verdict in exchange for a lighter punishment.@  Vorwerk v. State, 735
S.W.2d 672, 674 (Tex. App.CAustin 1987, pet. ref=d.).  Discussion of punishment
without any kind of an agreement is not sufficient to warrant reversal for jury
misconduct.  See Daniels v. State,
600 S.W.2d 813, 816 (Tex. Crim. App. [Panel Op.] 1980).

In this case, the only
evidence of jury misconduct is the jury=s note asking who would assess punishment.  While the note suggests that the jurors
improperly discussed punishment during guilt/innocence deliberations, there is
no evidence of an agreement of the kind necessary to warrant reversal.  Nor has Appellant demonstrated any harm.  We therefore overrule his fifth point.








                                 Judicial Notice of Limitations

In his sixth point, Appellant
argues that the trial court erred by instructing the jury that the court had
taken judicial notice of the date of the indictments and that there is no
statute of limitations for the offenses of capital murder and attempted capital
murder.  Appellant argues that the
instruction was unnecessary and constituted an improper comment on the weight
of the evidence.








As his sole authority in
support of this point, Appellant cites Hoang v. State, 939 S.W.2d 593,
594-98 (Tex. Crim. App. 1996).  In Hoang,
the court of criminal appeals noted that A[w]hen an indictment on its face clearly alleges an offense committed
within the applicable statute of limitations, the issue is not raised and the
trial court need not instruct the jury.@  Id. (citing Vincent
v. State, 10 Tex. App. 330, 333 (1881)). 
The State argues that the words, Aneed not instruct the jury@ do not mean Amust not instruct the jury@ with regard to limitations.  We
agree and conclude that Hoang does not support Appellant=s argument.  Appellant concedes
that the instruction was accurate because there is no limitation for the
offenses of capital murder and attempted capital murder.  He does not explain how the trial court=s instruction left Athe jury with the impression that the court is assisting the State in
getting a conviction,@ as he argues
in his brief, and the possibility of such an impression seems so remote as to
be utterly insignificant.  We therefore
overrule Appellant=s sixth
point.

                                             Conclusion

Having overruled all six of
Appellant=s points, we
affirm the trial court=s judgments.

 

 

ANNE GARDNER

JUSTICE

 

PANEL A:   CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  July 20, 2006











[1]See Tex. R. App. P. 47.4.





[2]We
note that Alaniz, Barnett, Brown, Gehring, and Holiman were also serving state
or federal prison sentences for various crimes at the time of trial.