**Opinion issued July 9, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00167-CR

———————————

**JAMES CURTIS HAMILTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Case No. 20-DCR-093060

**O P I N I O N**

James Curtis Hamilton was convicted by a jury of murder and sentenced to 69.5 years' imprisonment.[1] In one issue on appeal, Hamilton argues that the trial court abused its discretion in denying his *Batson*[2] challenge.

We affirm.

## Background

Because the sole issue raised in this appeal relates to Hamilton's *Batson* challenge, we address only the facts as they relate to what occurred during voir dire.

Seventy-five people were summoned for jury duty. After voir dire by both the State and Hamilton, the trial court granted 24 strikes for cause.[3] Thirty-six jurors remained in the strike zone, and each side had 11 peremptory strikes available.[4] Each side independently exercised a peremptory challenge against prospective juror numbers 41 and 57. Thus, 20 prospective jurors in all were peremptorily challenged.

The State exercised its 11 peremptory strikes as follows:

- Seven white males;

---

[1] The jury also assessed a $10,000 fine.

[2] *See Batson v. Kentucky*, 476 U.S. 79, 89 (1986) (holding that Equal Protection Clause forbids prosecutor from exercising peremptory strikes based solely on race of potential juror).

[3] The trial court granted an additional four strikes for cause, but those potential jurors were outside of the strike zone.

[4] *See* TEX. CODE CRIM. PROC. art. 35.15(b), (d).

2

- Two Hispanic males;

- One African American female; and

- One Asian female.

The jury as empaneled—12 jurors and 2 alternates—consisted of the following:

- Three Asian females;

- Three Asian males;

- Three Hispanic males;

- Two white females;

- Two white males; and

- One African American female.

During voir dire, Hamilton, who is African American, challenged the peremptory strikes used by the State against three prospective jurors: juror 13, a Hispanic male; juror 26, an African American female; and juror 46, a Hispanic male. Hamilton's counsel argued:

> Your Honor, this is a *Batson* objection. We would show that among the panel members, that the State used peremptory challenges on – were No. 13, . . . [who] is Hispanic. No 29, . . . she is African American. And No. 46 who is . . . Hispanic.
>
> We'd show that under 35.261,[5] my client is a member of a recognized racial minority group and that he is African American. We

---

[5] In 1987, the Texas Legislature adopted the *Batson* analysis in Article 35.261 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. art. 35.261; *Nieto v. State*, 365 S.W.3d 673, 676 n.2 (Tex. Crim. App. 2012).

would object to the State having made those strikes. We would ask that the Court require them to state race neutral reasons for striking those three members of the panel.

The trial court excused the jury from the courtroom and asked the State for a response to Hamilton's objections. The State first called the trial court's attention to the "diversity of the jury that has been seated," as it included many "members of minority races on the jury." With respect to juror 13, the State explained:

> No. 13 was struck primarily because I engaged in a one-on-one hypothetical with him relating to apparent danger. Using him in that, just him one-on-one, he refused to make eye contact with me when I was having the conversation with him.
>
> Additionally, in the question that we asked about when you would consider taking the life of another human, his answer was No. 2, which is at a heated verbal altercation.[6] We were obviously looking for people that were 3's and 4's, so that is another reason that we struck [No. 13].

The question to which the State referred asked the jury "how serious does a situation need to be before you would consider taking the life of another person." The jurors could answer: "1, a heated verbal exchange; 2, I feel in danger of some harm; 3, only if absolutely necessary because I'm certain to be killed myself; or 4, I would never take someone else's life even if I were in serious danger."

---

[6] We note that the State misstated the meaning of a juror's answer of a "2" to this question. Rather than a "heated verbal exchange," which was a "1," an answer of "2" meant "I feel in some danger of harm." Regardless, the State's explanation was still that it was "obviously looking for people that were 3's and 4's."

4

With respect to juror 29, the State explained that she "disagreed or may disagree with the five-year prohibition and lifetime prohibition on weapons. She would want to know more about the underlying conviction before she could say that she thought that was fair or not." Additionally, the State noted that juror 29 "was glaring at [the prosecutor] throughout the entire voir dire," and that she, like juror 13, responded with a "2 on the question about when you would consider taking a human life."

Finally, with respect to juror 46, the State explained that he also provided an "answer of 2 on the question about when they would consider taking a human life." The State noted that many of the other people who had answered 2 to this question were able to be eliminated for cause.

Following the State's above explanations for its strikes, the trial court asked the defense whether there was anything it needed to put on the record. The defense declined to cross-examination the State with respect to its explanations and presented no further argument or evidence to rebut the State's reasons. After confirming there was nothing else from the defense, the trial court overruled the *Batson* challenge, stating: "Your Batson challenge has been noted; and I'm satisfied with the State's race-neutral reasons for striking Jurors 13, 29, and 46. Your objection is overruled."

The case proceeded to trial whereafter Hamilton was convicted of murder and sentenced to 69.5 years' imprisonment. This appeal followed.

## *Batson* Challenge

In his sole issue, Hamilton argues that he is entitled to a new trial because the State improperly used three of its peremptory strikes in a racially motivated way.

## A. Standard of Review and Applicable Law

The racially motivated use of a peremptory strike violates the Equal Protection Clause of the United States Constitution. *See Batson v. Kentucky*, 476 U.S. 79, 89, (1986); *see also* U.S. CONST. amend. XIV, § 1. The exclusion of even one juror based on racial motive invalidates the jury selection process and requires a new trial. *Jones v. State*, 431 S.W.3d 149, 154 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

Named after the seminal United States Supreme Court decision, an objection that a peremptory strike was racially motivated is known as a *Batson* challenge. The resolution of a *Batson* challenge involves a three-step process, which encourages prompt rulings on objections to peremptory challenges and reduces disruptions in the jury-selection process. *Nieto v. State*, 365 S.W.3d 673, 675–76 (Tex. Crim. App. 2012).

First, the defendant must make a prima-facie showing of racial discrimination. *Id.* at 676. If the defendant makes the requisite showing, the burden shifts to the

prosecutor in the second step, requiring him to articulate a race-neutral explanation for the strike. *Id.* Finally, the trial court determines whether the defendant, as the opponent of the strike, has satisfied his burden of persuasion to establish by a preponderance of the evidence that the strike was indeed the product of purposeful discrimination. *Id.*; *see also Blackman v. State*, 414 S.W.3d 757, 765 (Tex. Crim. App. 2013). The "ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Ford v. State*, 1 S.W.3d 691, 693 (Tex. Crim. App. 1999) (quoting *Purkett v. Elem*, 514 U.S. 765, 767–68 (1995)).

To determine whether the defendant has proved purposeful discrimination, the trial court should consider all relevant factors, including, by way of example:

- whether there is a statistical disparity between the percentage of minority and white panelists who were struck;

- whether the record supports or contradicts the prosecutor's explanation for its strikes;

- whether the reason given for the peremptory challenge is related to the facts of the case;

- whether the prosecutor questioned the minority panelists before striking them;

- whether there was disparate examination of minority panelists, i.e., whether the prosecutor examined minority panelists so as to evoke a certain response without asking the same question of white panelists; and

- whether there was disparate treatment of minority panelists, i.e., whether the prosecutor's explanations for striking minority panelists apply equally well to white panelists who were not struck.

*See Nieto*, 365 S.W.3d at 678 n.3.

7

The trial court's ruling in the third step must be sustained unless it is clearly erroneous. *Id.* at 676. The clearly erroneous standard is highly deferential because the trial court is in the best position to determine if the prosecutor's explanation is genuinely race neutral. *Id.* The trial court must focus on the genuineness of the asserted non-racial motive, rather than the reasonableness. *Id.* We defer to the trial court's ruling in the absence of exceptional circumstances. *Id.* Whether the defendant satisfies his burden of persuasion to show that the State's facially race-neutral explanation for its strike is pretextual, not genuine, is a question of fact for the trial court. *Blackman*, 414 S.W.3d at 765.

An appellate court should consider the entire record of voir dire and need not limit itself to the specific arguments brought forth to the trial court by the parties. *Nieto*, 365 S.W.3d at 676. A reviewing court may not substitute its judgment for the trial court's in deciding that the prosecutor's explanation was pretextual. *Id.* Just like the trial court, the reviewing court must focus on the genuineness, rather than the reasonableness, of the asserted non-racial motive. *Id.*

**B.    Analysis**

**1.    *Prima Face Showing of Racial Discrimination***

Step one of the *Batson* analysis requires the opponent of a peremptory challenge to make a prima facie showing of racial discrimination. But this step may be rendered moot if, after a challenge is raised, "the trial court then proceeds

8

immediately to the second step by inquiring of the proponent [of the strike] whether he had a non-discriminatory purpose." *Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008). In that case, "a reviewing court is to assume that the opponent has satisfied his step-one obligation to make a prima facie case for purposeful discrimination and address only the second and third steps." *Id.* Here, step one of the *Batson* analysis was rendered moot when the State proceeded to step two and offered race-neutral reasons for its strikes. *See id.*

### 2. *Race-Neutral Reasons for the State's Strikes*

At the second step of this process, the proponent of the strike need only tender an explanation that is racially neutral on its face. *Blackman*, 414 S.W.3d at 764–65. A race-neutral explanation is one based on something other than the race of the panelist. *Jones*, 431 S.W.3d at 155 (citing *Hernandez v. New York*, 500 U.S. 352, 360 (1991)). At this step of the inquiry, the issue is simply the facial validity of the prosecutor's explanation. *Id.* Unless discriminatory intent is inherent in the explanation, the offered reason is race neutral. *Id.*

Regarding juror 13 and juror 29, the State relied on the juror's observed demeanor, which included juror 13's failure to make eye contact during a one-on-one conversation and juror 29's "glaring." The Texas Court of Criminal Appeals has recognized that the demeanor of a potential juror may be a valid, race-neutral

reason to exercise a peremptory strike. *See Nieto*, 365 S.W.3d at 680; *Yarborough v. State*, 947 S.W.2d 892, 896 (Tex. Crim. App. 1997).

Regarding all three jurors, the State relied on the jurors' answers to its question related to when they would consider taking a human life. All three of the challenged jurors answered a "2," meaning they would consider taking a human life if they felt "in danger of some harm." As Hamilton's defense at trial was that he acted in self-defense, the State could have perceived the jurors' "2" answer as potentially favorable to the defense. This Court has held that the State's reliance on a juror's answer to such question to show that the juror would be either neutral or favorable to the defense is a race-neutral explanation. *See Ledford v. State*, 649 S.W.3d 731, 745 (Tex. App.—Houston [1st Dist.] 2022, no pet.); *Green v. State*, No. 01-18-00162-CR, 2019 WL 2621738, at *11 (Tex. App.—Houston [1st Dist.] June 27, 2019, pet. ref'd) (mem. op., not designated for publication). Accordingly, we conclude that the State presented facially race-neutral reasons for the strikes.

### 3. *Purposeful Discrimination*

We must next determine whether appellant proved purposeful discrimination; that is, whether the trial court clearly erred in failing to find purposeful discrimination in the State's use of peremptory strikes. *See Stewart v. State*, 176 S.W.3d 856, 858–59 (Tex. App.—Houston [1st Dist.] 2005, no pet). The trial court must evaluate the facially race-neutral reasons given by the State to determine

10

whether those explanations are genuine or merely pretext for purposeful discrimination. *See Blackman*, 414 S.W.3d at 764–65.

Regarding the State's first reason for striking juror 13 and juror 29—i.e., failure to make eye contact during a one-on-one conversation and "glaring" at the State during the entire voir dire, respectively—Hamilton contends that these are not sufficient race-neutral reasons to justify the use of its peremptory strikes because the State did not engage these potential jurors "in conversations that would reveal any biases against the parties, or the facts anticipated to be raised in trial."

But, as the opponent of the strikes, Hamilton had the ultimate burden of persuasion to convince the trial court that the prosecution's reasons were not race-neutral. *See Ford*, 1 S.W.3d at 693; *see also Johnson v. State*, 68 S.W.3d 644, 649 (Tex. Crim. App. 2002) ("As the party making the *Batson* challenge, appellant had the burden to show that the explanation given was merely a pretext for discrimination."). Hamilton never cross-examined the prosecutor about her explanation based on the demeanor of jurors 13 and 29, nor did he provide the trial court with any evidence rebutting the prosecutor's claim.

Moreover, as noted above, the Texas Court of Criminal Appeals has held that the demeanor of a potential juror is a valid reason to exercise a peremptory strike. *See Yarborough*, 947 S.W.2d at 895–96; *see also Nieto*, 365 S.W.3d at 680. In *Yarborough*, a minority venire member was struck on the basis that he had "poor"

facial expressions and body language, which indicated to the prosecutor that the potential juror did not wish to be a part of the proceedings. 947 S.W.2d at 893. The court of criminal appeals held that counsel's statement about the panelist's demeanor was established because the statement, made on the record, went undisputed by opposing counsel and unquestioned by the trial court. *Id.* at 895. The court emphasized the great deference that should be afforded trial courts because the determination of race neutrality often turns on an evaluation of credibility. *Id.* at 896. However, the court noted that appellate courts are not bound to defer to the trial court and can consider factors such as:

> [T]he quantity and quality of either party's examination of the challenged venire member, whether the *Batson* movant cross-examined the counsel who made the peremptory challenge, whether the *Batson* movant rebutted the description of the venire member, whether the *Batson* movant proved that venire members of similar demeanor were not struck, and whether the judge was asked to rule on any conflict of fact.

*Id.*

In applying the factors here, contrary to Hamilton's assertions, the State engaged in one-on-one conversations with both juror 13 and juror 29. With respect to juror 13, the exchange was related to apparent danger:

> STATE:    Okay. So under the law, there's a concept called apparent danger as well; and what that means is there may be situations where a person doesn't actually have to wait for that deadly force or that force to be used against them before they might be justified in protecting themselves. And let me just give you an example. . . .

But let's say that you live next door to – I'll pick on somebody – [Juror 13], you live next door to a guy who always, always, from before we had open carry, always carried a gun. Even when he went to put the trash out, even when he went to go check the mail, always, always, always has a gun in his waistband.

You guys have a long-going dispute about your dog pooping in his yard, okay. And you get into lots of arguments about that; and one day, things escalate because your dog has pooped in his yard. And you guys are starting to fight, and then he reaches for his back waistband. What do you think he's probably doing?

JUROR 13: Reaching for his gun.

STATE: Reaching for his gun, right.

Under the law in that situation, maybe, depending on all the facts and circumstances. It may be that you don't have to stand there and wait until he actually pulls out that gun before you can do something to protect yourself; but once again, you have to look at all of the factors and circumstances, everything that led up to that, all of the history, everything you knew about him, and all the times he always carried that gun; and the jury would then be tasked with deciding whether a, once again, reasonable person in your shoes under those circumstances, what would they have done.

And it was during this exchange that the prosecutor stated that juror 13 refused to make eye contact with her.

With respect to juror 29, the State had questioned the venire about their thoughts on whether persons with family-violence convictions should not be permitted to possess firearms. She explained that a person convicted of family violence cannot possess a firearm for five years following the conviction. When

13

asked if anyone believed the time period should be shorter, juror 29 stated that it "[d]epends on the conviction," and the following exchange occurred:

> STATE: Juror No. 29, can you tell me a little bit more about that? What do you mean "It depends on –
>
> JUROR 29: I mean, if – For me, if you just feel like – depending on what the details or the evidence[] of the case were, five years might be too long.
>
> STATE: Okay. So you would want to know more – more specifics on the facts of that particular case?
>
> JUROR 29: Yes, ma'am.

Hamilton's trial counsel did not engage in any questioning of either juror 13 or 29, and he did not cross-examine the prosecutor about her stated reasons related to the demeanor of these jurors. Hamilton's counsel likewise did not rebut the prosecutor's description of the jurors' demeanor, nor did he ask if others had observed this demeanor. There is no evidence in the record indicating that a non-minority venire member had a negative demeanor but was not struck. And the trial court was not asked to rule on any issue of fact.

The State's description of juror 13's and juror 29's demeanor is proved on the record because Hamilton's counsel did not rebut the observation. *See Nieto*, 365 S.W.3d at 680; *Yarborough*, 947 S.W.2d at 895. Here, based on consideration of the above factors, Hamilton has failed to prove that the prosecutor's explanation for striking jurors 13 and 29 based on their demeanor was pretext for purposeful discrimination.

14

Regarding the State's second reason for striking jurors 13, 29, and 46—the prospective jurors' responses to a question about taking a human life—Hamilton contends that another juror—juror 35—who provided the same answer to the scaled question as jurors 13, 29, and 46 was not struck and, in fact, sat on the jury. To the extent that Hamilton intends to raise a disparate-treatment argument, i.e., that the State's reasons for striking jurors 13, 29, and 46 did not apply equally to juror 35, a non-African-American and non-Hispanic prospective juror, we hold that he has failed to carry his burden of persuasion to show purposeful discrimination because he failed to raise any objection, evidence, or rebuttal to the State's proffered race-neutral reasons at the *Batson* hearing.

Although a disparate-treatment argument may be raised for the first time on appeal, *see Young v. State*, 826 S.W.2d 141, 145–46 (Tex. Crim. App. 1991), that argument must be based on "evidence presented to the trial judge during voir dire and the *Batson* hearing." *Adair v. State*, 336 S.W.3d 680, 689 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (quoting *Young*, 826 S.W.2d at 145). In *Adair*, the defendant raised a disparate-treatment argument for the first time on appeal. *Id.* at 689. But because the defendant in *Adair* was relying on juror information cards that were not admitted at trial, we refused to consider them even though they had been provided to the Court in a "sealed, supplemental record," except to the extent that the juror information cards were discussed at the hearing. *See id.* This Court further

noted that "appellant failed to offer any rebuttal argument," "never attempted to rebut the prosecutor's explanations at trial," "never indicated to the court that he believed the explanations to be pretext," and "never attempted to make a comparative analysis of the information of the juror information cards to the trial court." *Id.* at 685, 689 n.5.

We then concluded that:

> [N]ot making the comparative analysis to the trial court is distinguishable from failing to make any argument whatsoever in response to the prosecutor's race-neutral reasons. In other words, the authority allowing for a comparative analysis for the first time on appeal does not excuse defense counsel from making any rebuttal argument whatsoever.

*Id.* at 690 (internal citations omitted); *see also Ledford*, 649 S.W.3d at 745–46 (following *Adair*).

The same is true here. At the *Batson* hearing, the juror information cards were not introduced before the trial court, and Hamilton raised no rebuttal argument to the State's race-neutral reason for striking these three jurors, never indicated to the trial court that he believed the explanation to be pretext, and never attempted to make a comparative analysis of the information in the juror information cards to the trial court. For these reasons, to the extent that Hamilton makes a disparate-treatment argument that a juror who provided the same answer was not struck, Hamilton has failed to meet his burden of persuasion to show that the State's reasons were pretext for purposeful discrimination. *See Ledford*, 649 S.W.3d at 745–46; *Adair*, 336

16

S.W.3d at 689–90; *see also Johnson*, 68 S.W.3d at 649 ("[A] party's failure to offer any real rebuttal to a proffered race neutral explanation can be fatal to his claim.").

But even when we compare the information in the juror cards, Hamilton's argument still fails. The State peremptorily challenged jurors 13, 29, and 46 because of their scaled answers of "2" on the State's question related to when they would consider taking a human life. Eight other prospective jurors provided the same scaled answer. Three of those (one white male, one white female, and one Asian male) were successfully challenged for cause or released by agreement.

Three others (two white males and one Asian female) who answered a "2" were also peremptorily challenged by the State, and one (white male) was peremptorily challenged by the defense. The only remaining prospective juror who provided a scaled answer of "2" to the question at issue—juror 35, an Asian male— was not challenged by either party and served on the jury. Thus, we cannot say on this record that jurors 13, 29, and 46 were struck on a basis that did not apply equally to most of the non-African American or non-Hispanic venire members. *See Watkins*, 245 S.W.3d at 453. Hamilton has failed to prove that the prosecutor's explanation for striking jurors 13, 29, and 46 based on their scaled answer was pretext for purposeful discrimination.

Having concluded that the State advanced race-neutral reasons for its peremptory challenges to jurors 13, 29, and 46, and that Hamilton has failed to meet

17

his burden of persuasion to show purposeful discrimination, we hold that the trial court did not clearly err in overruling Hamilton's *Batson* challenges to the State's use of peremptory strikes against these three prospective jurors.

We overrule Hamilton's sole issue.

## Conclusion

We affirm the trial court's judgment.


Terry Adams
Chief Justice


Panel consists of Chief Justice Adams and Justices Kelly and Goodman.

Publish. TEX. R. APP. P. 47.2(b).