**Jeremiah Johnson PEETZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–04–00642–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 10, 2005.

Christopher Downey, Houston, for appellant.

Alan Curry, Houston, for appellee.

Panel consists of Justices FOWLER, EDELMAN, and GUZMAN.

## OPINION

WANDA McKEE FOWLER, Justice.

A jury convicted appellant, Jeremiah Johnson Peetz, of a Class A misdemeanor offense of assault, and found true an enhancement paragraph that he intentionally selected the complainant, Jowanna Green, on the basis of his bias and prejudice against her race. The jury assessed punishment at 365 days in county jail and a $4,000 fine. On appeal, appellant raises two points of error: (1) the trial court's granting of the State's *Batson* challenge; and (2) the trial court's refusal to allow the defense to exercise additional peremptory strikes once the trial court reinstated two jurors. We affirm.

### Factual and Procedural Background

On December 5, 2003, appellant was driving his Ford Explorer and passed a bus stop where complainant, Jowanna Green, was waiting. When he did so, he utilized a modification made to his rear windshield wiper to spray an unknown liquid on Ms. Green. After appellant passed Ms. Green, his cousin, who was riding with appellant, screamed out the window, "F—— you, you n————," while he "shot the bird." Appellant later made a statement to the Metro Police Department and, following an investigation, the State filed charges of a Class A misdemeanor. The State also presented an enhancement paragraph alleging appellant had committed a hate crime. Complainant is black and appellant is white.

Following voir dire, appellant exercised his three peremptory strikes. He used all to exclude "every black person available to be on [the] jury." The State then raised a *Batson* challenge. Appellant offered race-neutral explanations for each of the struck

jurors, but the court ultimately upheld only one challenge and placed the other excluded black jurors on the jury.

The judge accepted appellant's argument that perhaps juror one was hostile to the defense and was thus properly struck. However, the judge rejected appellant's reasons for excluding the other two jurors, jurors six and ten. Appellant contended juror six had an angry expression, her face resembled one part of the anatomy of a chicken,[1] and she was reading a newspaper. Appellant claimed to reject juror ten because he had prior jury experience, which appellant did not prefer, and was "really glib." In response, the State and the court noted that juror four, a white juror, also had prior jury experience and was not struck. After considering the reasons offered, the court disagreed that appellant's reasons for striking jurors six and ten were truly race neutral. She informed appellant's attorney that jurors six and ten would sit on the jury.

Appellant then requested two additional peremptory strikes, but the court denied the request. The jury ultimately convicted appellant and found the enhancement paragraph true.

### Analysis

#### I. Racially–Motivated Strikes

■ In his first point of error, appellant contends the trial court committed reversible error when it determined he exercised his peremptory strikes based on race. We will affirm unless the court's ruling was clearly erroneous. *Emerson v. State*, 851 S.W.2d 269, 273 (Tex.Crim.App. 1993) (en banc) (citations omitted). We review the court's determination deferentially because it observed the attorneys and the prospective jurors. *Id.* So long as

---

1. While we do not understand exactly what appellant's attorney meant by this description, she seems to have acted out precisely what she meant by the phrase.

the record supports the court's findings, we will affirm. *Id.* We view all evidence in the light most favorable to the verdict. *Vargas v. State,* 838 S.W.2d 552, 554 (Tex. Crim.App.1992) (en banc).

### A. Purpose and procedure of a *Batson* hearing

 The Fourteenth Amendment guarantees persons the right to equal protection under the law, including freedom from racial discrimination in jury selection. *Georgia v. McCollum,* 505 U.S. 42, 44, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992) (citing *Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1880)) (explaining that the Court has, since 1880, maintained that racial discrimination by the State in jury selection offends the Equal Protection Clause). The right does not merely encompass a defendant's right to have a jury selected without regard to race, but also protects prospective jurors' rights to serve on a jury without regard to their race. *Id.* at 48, 112 S.Ct. 2348. Because the right attaches to excluded jurors, the State may raise a *Batson* challenge on the jurors' behalf. *Id.*

 Once a party raises a *Batson* challenge, the court must engage in a three-step process. First, the party opposing the peremptory strikes must make a prima facie showing of racial discrimination and thus carries a burden of production. *Ford v. State,* 1 S.W.3d 691, 693 (Tex.Crim.App.1999). Second, the burden shifts to the party who exercised the peremptory strikes to give a facially-neutral explanation. *Id.* Finally, the court must determine whether or not the challenging party has made out a case of discrimination. *Id.* The burden of persuasion always rests on the party challenging the use of the peremptory strikes. *Id.* (citing *Purkett v. Elem,* 514 U.S. 765, 767–68, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)). However, the court must evaluate the reasons proffered for the strikes in light of what it observes during voir dire and during the *Batson* hearing. *See, e.g., Johnson v. State,* 68 S.W.3d 644, 649 (Tex.Crim.App. 2002) (stating appellate courts must give great deference to the trial courts because they make determinations based on credibility and demeanor in connection to the *Batson* hearing).

### B. The trial court's role during the *Batson* hearing

Appellant argues that the court erred when it failed to ask the State to rebut each and every one of appellant's reasons for exercising his strikes. Specifically, citing *Yarborough v. State,* 947 S.W.2d 892 (Tex.Crim.App.1997) (en banc), appellant argues we must accept as true any assertion made during a *Batson* hearing unless the other party contradicts it. A close reading of *Yarborough* invalidates appellant's claim. In *Yarborough,* the Court of Criminal Appeals addressed whether or not uncontradicted counsel statements were sufficient on appeal to support a trial court's finding. *Id.* at 893. That question is not before us in this case. Here, the question is whether the trial court must accept as true uncontradicted reasons for strikes. *Yarborough* does not mandate the trial court accept any proffered justification for a strike. Quite the opposite. The *Yarborough* Court specifically stated that "the counsel (and the judge) naturally will be the best-placed observers of the venire members." *Id.* at 895; *see also Gibson v. State,* 144 S.W.3d 530, 534 (Tex.Crim.App. 2004) (citation omitted) (holding that " 'pretext' is solely a question of fact … [t]herefore, the trial court [is] in the best position to make that credibility determination"). Obviously, the Court of Criminal Appeals intended the trial court to observe

voir dire and rule according to its observations.

■ Appellant's argument also misunderstands the procedure of a *Batson* hearing. The first two steps of a *Batson* hearing are simply evidentiary steps whereby both parties present their evidence to the court. *Johnson v. California*, —— U.S. ——, —— – ——, 125 S.Ct. 2410, 2417–18, 162 L.Ed.2d 129 (2005). While any facially-neutral reason will suffice to meet appellant's burden of production for the second step, appellant is simply producing evidence for the hearing. It is at that point the court evaluates the evidence presented and considers what it observed during voir dire and the *Batson* hearing. *Id.* 125 S.Ct. at 2418 (citing *Purkett*, 514 U.S. at 768, 115 S.Ct. 1769). We grant the lower court great deference because it observes the attorneys and the prospective jurors, and is thus able to evaluate whether the justifications proffered are genuine or not. *Johnson*, 68 S.W.3d at 649. Appellant seeks to transform the third step into another evidentiary step and force the State to produce more evidence. While rebutting the race-neutral justifications may be helpful to the court—as the State did to show striking juror ten was race based—the third step has always been the evaluation stage of the *Batson* hearing and we will not alter the procedure to require more of the challenging party. Neither do we accept appellant's contention that the court needed to "articulate sufficient contradictory information" to rebut defense counsel's proffered reasons.

## C. The record supports the trial court's finding

■ This case concerned a racially-motivated crime with a white defendant and a black victim. Appellant was not entitled to be tried by an all-white jury. *See generally McCollum*, 505 U.S. at 46, 112 S.Ct. 2348 (citing *Strauder*, 100 U.S. at 305, 10 Otto 303 for the proposition that "a defendant has no right to 'a petit jury composed in whole or in part of persons of his own race' "). Here, the State met its burden of proof by showing that appellant used all three peremptory strikes against the three black jurors who would otherwise be empaneled. Appellant then met his burden of proof by providing facially-neutral reasons for each of the three strikes. It was in the third step that the court evaluated the reasons appellant proffered.

The court granted the strike regarding one of the black jurors, indicating that juror was indeed hostile to the defendant. The court did not give a detailed reason for rejecting the strike against juror six, who appellant claimed was angry. However, it did state that it disagreed with appellant's characterization and that it believed striking juror six was race-based.[2] The court also believed appellant provided a pretextual reason for striking juror ten. Appellant claimed to have struck juror ten because that juror had prior jury experience and because he was "really glib." Yet, juror four, a white juror, also had prior jury experience. Moreover, the court again did not agree with appellant's

---

2. We also note that the record indicates no in-depth questioning of juror six to determine if she were indeed hostile. Regarding lack of questioning, the Supreme Court has stated, "failure to engage in any meaningful voir dire examination on a subject [a party] alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination." *Miller–El v. Dretke*, —— U.S.

—— , —— , 125 S.Ct. 2317, 2328, 162 L.Ed.2d 196 (2005) (citation omitted). Further, appellant's other justification—that juror six was reading a newspaper—is not reflected in the record. Both of these reasons are properly left to the trial judge to evaluate and rule on based upon what she observed during voir dire.

characterization of juror ten's demeanor.[3] Both jurors six and ten indicated they could follow the law and consider all ranges of punishment. There is nothing on the record to support appellant's characterizations of them as angry, glib, or somehow inappropriate for jury service. Based on the record, we cannot say that the court clearly erred in empaneling two qualified jurors whom it determined were struck for no reason other than their race. We must rely on the court's evaluation of appellant's credibility and its observations during voir dire. We overrule appellant's first point of error.

## II. Remedy for *Batson* Violation

### A. A trial court may fashion an appropriate remedy

■ In his second point of error, appellant argues that even if he did violate *Batson*, the court nonetheless erred by not restoring to him those two peremptory strikes. Essentially, appellant asks us to adopt the rule that a party may engage in racial discrimination and suffer no consequences. Adopting appellant's rule would only foster greater discrimination. That we will not do.

■ When a court finds a *Batson* violation, it may fashion an appropriate remedy according to its discretion. *State ex rel. Curry v. Bowman*, 885 S.W.2d 421, 425 (Tex.Crim.App.1994) (en banc). In this case, appellant argues that the court impermissibly allowed him only one peremptory strike while allowing the State three. *See* TEX.CODE CRIM. PROC. ANN. Art. 35.15(c) (Vernon 1991) (providing each side three peremptory strikes in a misdemeanor trial held in a county court at law). However,

appellant did exercise three strikes. But, he did so in a way the court found to be impermissible, racially-motivated, and thus unconstitutional. As a remedy, the court appropriately empaneled the two wrongfully-struck jurors. Presumably, a further implication of the court's remedy was that appellant lost his gamble in trying to exclude all blacks from the jury and did not get the full effect of his strikes. That is not the same as not exercising his strikes, which is guaranteed by statute.

Appellant cites two cases he believes support this claim that a court must restore peremptory strikes. *See Perez v. State*, 171 Tex.Crim. 505, 351 S.W.2d 234 (1961); *Truong v. State*, 782 S.W.2d 904 (Tex.App.-Houston [14th Dist.] 1989, pet ref'd). Those cases are inapposite. In those cases, the courts addressed counsel mistakes resulting in an exercise of fewer strikes than allowed. *Perez*, 351 S.W.2d at 234–35 (holding it is error to refuse to allow an attorney to correct a strike when he meant to strike one juror, but erroneously gave the name of another juror); *Truong*, 782 S.W.2d at 905 (determining it was error to empanel a juror that the attorney intended to strike, but mistakenly failed indicate the strike in the proper form). Those courts held that when a mistake results in a loss of peremptory strikes, and it can be cured before the jury is sworn in, the court must correct it. But those cases involved clerical mistakes resulting in the use of fewer peremptory strikes than the law allows, while this case involves the deliberate misuse of strikes. The two are different situations and merit different responses. The court appropriately fashioned a remedy that would penal-

---

**3.** As with juror six, again there is no questioning we see indicating that appellant even attempted to discern whether juror ten's prior jury service would somehow hinder his ability to serve on this case. Additionally, appellant did not pursue questioning regarding whether or not juror ten was truly "really glib" in regards to this case. Again, these are credibility and demeanor determinations properly within the trial judge's purview.

ize counsel for unconstitutionally exercising peremptory strikes: she empaneled wrongfully-struck jurors and refused to allow counsel to reuse these strikes, thereby putting other litigants on notice of the unwanted consequences of improperly using a peremptory strike.

## B. The trial court fashioned an appropriate remedy for the violation

To hold that courts must restore the misused peremptory strikes is not only against the purpose of *Batson,* but also logically unsound. The United States Supreme Court sought to fulfill the purpose of the Fourteenth Amendment in guaranteeing equal protection by eliminating race as an acceptable factor in jury selection. Were we to accept appellant's rule, we would undermine *Batson,* for there would be no consequence for racially-motivated strikes. If a trial court refuses to restore misused strikes, litigants truly face a consequence and are less likely to engage in improper, racially-motivated behavior. Such a remedy, though not required, is acceptable.

In short, appellant exercised his three strikes, the court invalidated two of them, and appellant must cope with losing his race-based gamble. The effect of a successful *Batson* challenge always has been that the party exercising the strikes does not enjoy the benefit of those strikes. We hold the court did not abuse its discretion in fashioning a remedy. We overrule appellant's second point of error.

### Conclusion

For the foregoing reasons, we overrule appellant's points of error and affirm the ruling of the trial court.