Affirmed and Memorandum Opinion filed July 25, 2006








Affirmed and Memorandum Opinion filed July 25, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00774-CR

____________

 

MIGUEL NUNEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 232nd
District Court

Harris County, Texas

Trial Court Cause No. 1,013,463

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Miguel Nunez, was indicted for the felony
offense of possessing more than 400 grams of heroin with the intent to
deliver.  A jury convicted and sentenced him to twenty-two years= confinement in
the Texas Department of Criminal Justice and assessed a $75,000 fine.  On
appeal, he raises four issues: (1) the evidence is legally insufficient to
sustain his conviction; (2) the evidence is factually insufficient to sustain
his conviction; (3) the trial court reversibly erred when it didn=t grant his Batson
challenge; and (4) the trial court reversibly erred when it sustained his
objection to the State=s closing argument during punishment, but
did not grant a mistrial.  We affirm.








Factual and Procedural Background

On Monday, January 17, 2005, interdiction[1]
officers with the Houston Police Department were surveilling the AmTrak
station.  They intercepted two couriers carrying more than twenty pounds of
marijuana.  While detaining these couriers for transport to the police station,
Officer Gomez observed appellant and Angel Sanchez arrive in a cab with only a
black briefcase and a red and black duffle bag.  According to Officer Gomez,
the two exited the cab and looked around nervously; the two were generally
acting suspiciously and as drug couriers typically act.  Due to their
suspicious behavior, Officer Gomez called Officers Lopez and Heinle to join him
as he approached appellant and Sanchez.

When Officers Lopez and Heinle arrived, Officer Gomez was
already engaged in conversation with Sanchez.  Officer Lopez engaged appellant
in conversation, and Officer Heinle stood near to all four in order to provide
protection if necessary.  Appellant gave contradictory answers to questions and
provided an Aodd@ explanation for why he had flown into
Houston just hours earlier from Philadelphia and was attempting to purchase a
train ticket back to Philadelphia so quickly after his arrival.  Police
searched a duffle bag appellant had with him and found a blue Abelly band.@  The belly band
contained 773.4 grams of heroin of 49.8% purity.  

At trial, testimony showed that once police had charged
appellant, Officer Bradley of the Heroin Squad approached appellant and
attempted to get his cooperation so as to capture other heroin dealers. 
Although the record indicates appellant ultimately did not cooperate, he told
Officer Bradley that his mother sent him to Houston to retrieve the heroin, which
was valued between $750,000 and $1,000,000.  








Appellant testified at both phases of his trial and
categorically denied the officers= version of what
happened before and after his arrest.  According to appellant, he purchased a
one-way plane ticket from Philadelphia to Houston in order to visit his mother
who had been visiting Houston and suffered from a medical emergency.  He was
notified of the emergency on Saturday, January 15, but could not raise the
necessary funds for the plane ticket until Monday.  Additionally, he took no
clothes with him on his trip because he planned to stay with his mother=s friend, who
would provide clothes.  His neighbor, Sanchez, insisted on joining him on his
trip.  Appellant had no idea why Sanchez wanted to travel to Houston, but had
no reason to forbid his coming.  The two paid cash for one-way plane tickets
because they did not know how long they would need to stay in Houston.

When they arrived at 10:30 a.m., according to appellant,
Sanchez went somewhereCappellant did not know whereCfor over two
hours.  Appellant waited in a restaurant for Sanchez to return.  Once Sanchez
returned, the two took a cab and Sanchez directed the driver because he spoke
English, but appellant did not.[2] 
At some point after arriving in Houston, appellant received a phone call from
his sister in Philadelphia telling him that the emergency had ended and his
mother was already home in Philadelphia.  With the emergency resolved, there
was no need for appellant to remain in Houston any longer.  Sanchez had
directed the cab driver to the train station, and the two began inquiring about
train tickets to Philadelphia.  It was at this point that officers approached
the two.  Appellant never gave officers permission to search any bag, claimed
he did not own the duffle bag, and did not know anything about the drugs. 

After hearing these competing versions of events, the jury
convicted appellant and then sentenced him to twenty-two years= confinement and
assessed a $75,000 fine.  Appellant challenges the legal and factual
sufficiency of the evidence, and contends the trial court reversibly erred by
not granting his Batson challenge and not granting a mistrial after the
State made certain comments in its punishment-phase closing argument.[3] 
We affirm.

 








 Analysis

I.        Legal
Sufficiency

In his
first point of error, appellant alleges the evidence is legally insufficient to
sustain his conviction.  In a legal-sufficiency challenge, we employ the
familiar standard of viewing the evidence in the light most favorable to the
verdict.  King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en
banc).  If any rational trier of fact could have found the essential elements
of the offense beyond a reasonable doubt, we will affirm.  Id.  

As an
initial matter, appellant contends we may not consider the rebuttal testimony
of Officer Bradley because that evidence was admitted for impeachment
purposes only.  However, without a limiting instruction to the jury, evidence
is admitted as general evidence and may be used for any purpose.  Arana v.
State, 1 S.W.3d 824, 829 (Tex. App.CHouston [14th
Dist.] 1999, pet. ref=d).  Because appellant did not request or
receive a limiting instruction, the evidence was admitted for all purposes.  We
now turn to an evaluation of the evidence.








Appellant argues that the evidence did not affirmatively
link him to the contraband.  To prove a case for possession of illegal drugs,
the State must affirmatively link the defendant to the contraband.  Brown v.
State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).  The State must prove
that the defendant (1) exercised actual care, control, or custody of the
substance; and (2) knew the substance was contraband.  See Brown, 911
S.W.2d at 747.  When the defendant did not exercise exclusive control over the
place where the contraband was found, the State must provide evidence to
affirmatively link the defendant to the contraband.  Reed v. State, 158
S.W.3d 44, 47 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d).  Those links
may be established by additional facts and circumstances raising a reasonable
inference of the defendant=s knowledge and control.  Id.  When
determining if the State established affirmative links, we examine the presence
of certain factors such as the following: (1) the contraband was in plain view;
(2) the contraband was accessible to the defendant; (3) the defendant was the
owner of the place where the contraband was found; (4) the defendant was the
driver of the automobile in which the contraband was found; (5) the contraband
was found on the same side of the vehicle seat as the defendant was sitting;
(6) the contraband was found in an enclosed place; (7) the odor of drugs was
present; (8) paraphernalia to use the contraband was in view of or found on the
defendant; (9) conduct by the defendant indicated a consciousness of guilt;
(10) the defendant had a special connection to the contraband; (11) occupants
of the vehicle gave conflicting statements about relevant matters; (12) the
defendant appeared to be under the influence of drugs; and (13) affirmative
statements connected the defendant to the contraband.  Id. n.1 (citation
omitted).  In conducting our review, we are more concerned with the
significance of the factors than the number of factors.  See id. 
However, the affirmative linksCthe additional facts and circumstancesCneed not rule out
every other reasonable hypothesis of innocence.  See id. 

The jury heard evidence that appellant admitted to being a
drug courier.  Specifically, appellant told officers that his mother sent him
to Houston to retrieve a large amount of heroin for resale.  Appellant traveled
to Houston, made the drug transaction, and was en route to Philadelphia when
apprehendedCall by his own admission.  Even without this admission,
police testified that appellant acted in a suspicious way, consistent with a
drug courier.  Appellant told police that the bag containing the drugs was hisCthough he
disavowed owning the belly band in which the drugs were found.  This evidence,
viewed in the light most favorable to the verdict, is legally sufficient to
support appellant=s conviction.

II.       Factual
Sufficiency








Appellant also raises a factual sufficiency challenge. 
Factual-sufficiency challenges require the reviewing court to consider and
balance all the evidence in a neutral manner.  See  Zuniga v. State,
144 S.W.3d 477 (Tex. Crim. App. 2004); Clewis v. State, 922 S.W.2d 126,
129 (Tex. Crim. App. 1996).  In reviewing the evidence, an appellate court will
determine the evidence is factually insufficient if: (1) the evidence
supporting the verdict is too weak to support the finding of guilt beyond a
reasonable doubt; or (2) in the event that there is evidence both supporting
and contradicting the verdict, the contrary evidence is so strong that guilt
cannot be proven beyond a reasonable doubt.  Zuniga, 144 S.W.3d at 484. 
An appellate court cannot, in light of deference given to the jury, substitute
its own conclusions for that of the jury.  See Cain v. State, 958 S.W.2d
404, 407 (Tex. Crim. App. 1997); Clewis, 922 S.W.2d at 133.  AThe jury . . . is
the exclusive judge of the facts proved, and of the weight to be given to the
testimony.@ Tex. Code
Crim. Proc. art. 38.04.

The jury heard appellant=s two versions of
events: the one presented to Officer Bradley and discussed above; and (2)
appellant=s version of events relayed while on the witness
stand.  It was the jury=s role to resolve the conflicts in that
testimony, and it did so.  We will not disturb that finding on appeal absent
some contrary evidence that is strong enough such that guilt could not have
been proven beyond a reasonable doubt.  Appellant was arrested with the heroin,
he admitted to one officer that his mother sent him to Houston to retrieve it,
and that he was returning with the heroin to Philadelphia.  The only contrary
testimony was his trial version of events.  Appellant=s testimony
essentially alleged the police were lying regarding (1) his suspicious
activities (2) his ownership of the bag containing the drugs, and (3) the
illogical aspects of his story.  It was the jury=s role to resolve
these conflicts in testimony, which it did.  The jury was justified in
rejecting appellant=s testimony, determining he was  not
credible, and instead believing the officer=s testimony.  

III.      Batson
Challenge

In his third issue, appellant contends we must reverse
because the trial court did not conduct further proceedings in the third phase
of a Batson challenge.  At the close of voir dire, counsel for appellant
raised a Batson challenge and the following discussion occurred between
the judge and the lawyers in this case:

[Appellant]:   I would like to make
a Baston challenge.

The Court:    All right.

[Appellant]:   As to the only 2
Hispanic jurors on the whole panel that were struck by Mr. Jones.  That would
be No. 14 and juror No. 32.

The Court:    14 and 32.

[Appellant]:   14 and 32 Your
Honor.








The Court:    14 and 32 All right. 
You have an explanation?

[State]:         Yes, sir.  For the
record Your Honor the State represents that no challenge was made for any racial
reason.  State challenge [sic] juror No. 14 for the reason that she has a
cousin in prison doing 10 years for a drug case and this is a drug case.  Also
she=s below 30 years of age.

The Court:    And 32.

[State]:         Which was the
other one, 32?  This is the juror that=s charged with theft Your Honor.  Because she was charged
with theft.

[Appellant]:   Which she already
testified about that Judge.  She already told us in chambers that that was a
long time ago and the case was dismissed so there=s really not a neutral reason why this juror should
be dismissed.

As to juror No. 14 there are some other jurors that [the State] is
allowed in [sic] who also have relatives who have criminal background [sic]
that he=s let them in [sic].

[State]:         Not that I=m aware of.

[Appellant]:   This is nothing as
to a pretext [sic] as to why these 2 are being dismissed.

The Court:    I
accept the reasons for both jurors.

Appellant
complains because the trial court simply overruled his Batson challenge
after both he and the State=s attorney stated their reasons why the
strikes were race-motivated/race-neutral.  It appears that appellant wanted the
trial court to conduct further proceedings or engage in more analysis on the
record.  We have considered quite similar arguments in another case and
rejected them.  Peetz v. State, 180 S.W.3d 755, 758 (Tex. App.CHouston [14th
Dist.] 2005, no pet.).








In Peetz, we reviewed the structure of a Batson hearing. 
We explained that Batson hearings have three distinct steps and a very
specific role for the trial judge throughout the process.  See id.  In
the first, the challenging party[4]
must make a prima facie showing of discrimination.  Id.  In the second,
the striking party must provide race-neutral reasons for his strike.  Id. 
Those are both evidentiary steps.  Id. at 759.  In the third step, the
trial court evaluates the evidence presented, considers its own perceptions of
voir dire, and then determines whether or not the Batson challenge
was sufficient.  See id.  Although on some occasions a trial court may
decide to delve into the matter further, if the trial court is satisfied from
the lawyers= answers and its own observations that it needs no
further information, it need not conduct a further review of the challenge.

We afford the trial court great deference in its rulings
because it observes the attorneys and venirepanel and is thus in a better
position to evaluate whether the strikes were racially motivated or not.  Id. 
Below, the trial court apparently decided from the lawyers= statements and
its own observation of voir dire that the State=s strikes were not
racially motivated.  In addition, neither at trial nor on appeal did appellant
specify which remaining venire members the State had treated differently from
the venire members it struck.[5] 
This failure by appellant=s trial counsel also may have played some
role in the trial court=s evaluation.  Thus, the trial court
followed the three-step procedure outlined in Peetz, and, on the basis
of this record, we do not conclude that the trial court=s evaluation was
clearly erroneous.  See Peetz, 180 S.W.3d at 760.  We overrule appellant=s third issue.

IV.      Closing
Argument

In his final issue, appellant contends the trial court
erred when it sustained his objection to the State=s closing argument
during the punishment phase, but did not grant a mistrial.  Appellant=s issue concerns
the following argument and exchange:








[The State]:  Looking at this I
think the testimony is that=s 473 grams, that the average - - the testimony is the average does
[sic] is ten percent of that, one-tenth of a gram so that=s 400 and - - 440 grams.  You can
cut that at least ten times.  That=s forty-seven thousand three-hundred opportunities, doses
to kill somebody overdosing with Heroin.  Forty-seven thousand opportunities to
ruin a life, to destroy a child=s future, to destroy a community, to cause someone to be a high-jacker
or somebody to support a Heroin addict, an opportunity to turn forty-seven
thousand human beings into zombies, hopeless drug addicts.  That=s what they=re doing to our society.  If
this were an explosive you realize if you detonated that - -

[Appellant]:   Judge, I=m going to object to that.  We
almost arguing [sic] whether this was a terrorist case and it=s not.  It=s improper argument and I object to
it and ask that the jury - -

The Court:    I sustain that.

[Appellant]:   Ask for an
instruction to disregard.

The Court:    Jury will disregard.

[Appellant]:   Move for mistrial
Your Honor.

The Court:    Be
overruled.

(Emphasis
added).  Appellant contends that this argument was Aextreme and
manifestly improper, and injected new facts harmful to the defendant into the
trial proceeding.@  

The approved general areas of argument are: (1) summation
of the evidence; (2) reasonable deduction from the evidence; (3) answer to
argument of opposing counsel; and (4) plea for law enforcement.  Wesbrook v.
State, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).  Even an impermissible
argument, however, will not constitute reversible error unless, in light of the
record as a whole, the argument is extreme or manifestly improper or injects
new facts harmful to the accused into the trial proceeding.  Id.  

The trial court determined that the above-referenced
argument was error and gave a limiting instruction.  We presume juries comply
with limiting instructions.  Id. at 116.  Only when the argument
constitutes offensive or flagrant error will we reverse when there has been an
instruction to disregard.  Such was not the situation in this case.  








Certainly, terrorism is an inflammatory topic in today=s world.  And,
appellant contends that the comments sought to equate him with a terrorist. 
However, in light of the entire statement, we do not believe the comment was so
offensive and inflammatory as to constitute reversible error.  The statement as
a whole, and in light of the surrounding comments, simply referenced the
serious impact distribution of such a large amount of heroin could have on a
community.  Though his analogy was one the trial court deemed to be error, it
was not of such a magnitude that the instruction to disregard was inadequate. 
We overrule appellant=s final issue.

Conclusion

Having overruled each of appellant=s issues, we
affirm the judgment of the trial court.

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed July 25, 2006.

Panel consists of
Justices Fowler, Frost, and Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).

 









[1]  As Officer Gomez testified, the Interdiction Squad
is a specialized arm of the Houston Police Department trained in identifying
narcotics couriers and traffickers utilizing public transportation.





[2]  At the time of trial, appellant had lived in the
United States only two years.





[3]  We incorporate the necessary facts regarding the Batson
challenge and the closing argument in the analysis section.





[4]  The challenging party can be either the State or the
defendant.  In this appeal, the defendant challenged the State=s strikes; in Peetz, the State challenged the
defendant=s strikes.





[5]  Appellant has cited part of the voir dire transcript
in which appellant=s trial counsel contended the State was making
race-neutral strikes.  However, appellant provides no other record cites or
analysis for why the trial court=s
decision was an abuse of discretion.