

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-06-395-CR

DONALD GULLEY                                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In seven points, Appellant Donald Ray Gulley appeals his conviction of possession of a controlled substance in the amount of one to four grams. We affirm.

---

[1] *See* TEX. R. APP. P. 47.4.

## II. Factual and Procedural History

On December 29, 2005, Officer Brian Cose stopped a vehicle driven by an individual whom he recognized as Ronnie Kirby. Appellant was a passenger in the car. Officer Cose believed Kirby to be driving with a suspended license.[2] Officer Cose subsequently arrested Kirby for possession of drug paraphernalia. After putting Kirby in the back of his patrol car, Officer Cose walked to the passenger side where another officer, Keith Martin, was instructing Appellant to step out of the vehicle so that he could conduct a search of the car incident to the arrest of Kirby. Appellant stepped out of the vehicle and then reached back into the car. Officer Martin saw that Appellant was swiping his hand across the seat and wiping something onto the floorboard of the car. Officer Martin saw what appeared to be crack cocaine. Appellant was then arrested for possession of a controlled substance. While Officer Martin gathered all the loose substance he could find from the car's seats, floorboard, and surrounding ground, Officer Cose conducted a search of Appellant and found a pill bottle inside Appellant's jacket pocket that appeared to contain crack cocaine. The substances were sent to a forensic scientist, who tested them and later

---

[2] Officer Cose testified that Officer Jason Martin informed him via the radio that Kirby had a suspended license; however he was unable to verify the information because his computer system was not working.

2

testified that they were both cocaine with a combined weight of one gram.

Appellant was subsequently charged with possession of a controlled substance in the amount of one to four grams. He pleaded not guilty. The jury returned a guilty verdict and assessed Appellant's punishment at thirty-three years' confinement and a $5,000 fine. The trial court sentenced him accordingly.

Appellant filed a motion for new trial on November 9, 2006. The hearing was held on December 21. At the start of the hearing, the trial court granted the State a continuance as to Appellant's ineffective assistance of counsel issue only, thus prohibiting Appellant from presenting any evidence on the issue at the hearing. However, the trial court allowed Appellant to present evidence on the remaining issues in his motion for new trial. The trial court held no further hearing on Appellant's motion for new trial, and it was overruled by operation of law on December 27, 2006.

Appellant filed his appeal on June 19, 2007. On December 11, 2007, we abated the appeal and remanded the case to the trial court for a hearing on Appellant's motion for new trial based upon ineffective assistance of counsel only. On January 18, 2008, the trial court held a hearing on this theory of Appellant's motion for new trial. The record reflects that the trial court denied

3

Appellant's motion. Appellant's appeal was reinstated on February 22 upon our receipt of the supplemental record from the trial court.

### III. Motion to Suppress

In Appellant's first point, he argues that the trial court violated his federal and state constitutional rights against unreasonable searches and seizures by overruling his motion to suppress the fruits of the illegal stop.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an

4

evaluation of credibility and demeanor. *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); *State v. Ballman*, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref'd). But when the trial court's rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court's rulings on mixed questions of law and fact. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652-53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *Id*. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Id*.

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S. Ct. 1868,

5

1880 (1968); *Carmouche*, 10 S.W.3d at 328. An officer conducts a lawful temporary detention when he or she has reasonable suspicion to believe that an individual is violating the law. *Ford*, 158 S.W.3d at 492. Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Id*. at 492-93. This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id*. at 492.

**B. Analysis**

Appellant argues that the evidence obtained as a result of the stop should have been suppressed because Officer Cose did not have reasonable suspicion to stop the car in which Appellant was a passenger. Appellant argues that the reasons given by Officer Cose were merely an attempt through hindsight to create a justification for stopping and detaining Kirby and Appellant.

We agree with the State that the record supports the trial court's conclusion that Officer Cose had reasonable suspicion to stop the car. Officer Cose testified to specific, articulable facts that, when combined with rational inferences from those facts, led him to reasonably conclude that Kirby or

6

Appellant was, had been, or soon would have been engaged in criminal activity. *See Ford*, 158 S.W.3d at 492-93.

First, Officer Cose testified that he reasonably suspected that Kirby was driving without a valid license at the time he stopped her and Appellant in December. Officer Cose had stopped Kirby a month earlier, and she did not have a valid license then. Officer Cose's belief that Kirby may have been driving without a license was reinforced when Officer Martin told him before the stop that he had arrested Kirby one or two weeks earlier for not having a driver's license. Based on this information, Officer Cose could have rationally inferred that it was likely that Kirby's license was still suspended.

Next, Officer Cose testified that he reasonably believed that Kirby was, had been, or soon would be engaged in criminal activity. *See id*. at 492-93. Officer Cose stated that through his past contacts with Kirby, he knew that "she was often found with drug paraphernalia," such as crack pipes, and that she was a known drug user. Officer Cose also testified that in November 2005, he had observed Kirby and Appellant driving a vehicle out of a high-drug-related-crime neighborhood and heading northbound on the I-35 service road towards the TA truck stop. Officer Cose stopped the vehicle and discovered that Kirby was driving without a license, and he discovered drug paraphernalia inside the car. A few weeks after Officer Cose made the November stop of

7

Kirby, Denton police arrested a man for possession of drug paraphernalia at the TA truck stop on I-35, an area known for drug activity. He told the police that he was waiting for Kirby and Appellant so that he could buy crack from them. The man also told the arresting officer that when Officer Cose had stopped Kirby and Appellant in November, they had thrown some crack out of the window immediately prior to the stop.

Regarding the December 29 stop, Officer Cose testified that when he initially spotted Kirby and Appellant, they were leaving the same high-crime, high-drug area that they had been leaving when he stopped them in November. In addition, they were also heading in the direction of the TA truck stop, the same direction that they had been traveling in when he stopped them in November. These facts, combined with the knowledge that Kirby and Appellant reportedly had had an arrangement to sell crack at the TA truck stop only a month before, permitted Cose to draw the rational inference that Kirby, Appellant, or both were, had been, or soon would have been engaged in criminal activity. *See id.*

Based on these specific, articulable facts and the rational inferences from those facts, it is apparent from the record that Officer Cose had reasonable suspicion to stop Kirby and Appellant, and thus the trial court did not err by

8

denying Appellant's motion to suppress.  Therefore, we overrule Appellant's first point.

## IV. *Batson* Challenge

In Appellant's fourth point, he argues that the trial court violated his federal and constitutional rights to a jury of his peers by improperly overruling his *Batson* challenge.[3]  Specifically, Appellant argues that the State failed to adequately articulate race-neutral reasons for striking one venireperson.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits race-based jury selection.  *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001).  When reviewing a trial court's finding with regard to a *Batson* challenge, an appellate court reverses the ruling only if it appears clearly erroneous.  *See Rhoades v. State*, 934 S.W.2d 113, 123 (Tex. Crim. App. 1996); *Stewart v. State*, 176 S.W.3d 856, 858-59 (Tex. App.—Houston [1st Dist.] 2005, no pet.).  Because a trial court is in a unique position to make such a determination, its decision is accorded great deference. *Jasper*, 61 S.W.3d at 421; *Ladd v. State*, 3 S.W.3d 547, 563 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1070 (2000).

---

[3] *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712 (1986).

Once a party raises a *Batson* challenge in the context of racial discrimination, the trial court must engage in a three-step inquiry. First, the defendant must make a prima facie showing of racial discrimination. *See Ford v. State*, 1 S.W.3d 691, 693 (Tex. Crim. App. 1999); *Peetz v. State*, 180 S.W.3d 755, 758 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Second, the burden of production shifts to the State to present a race-neutral explanation for its challenged strike. *Stewart*, 176 S.W.3d at 858. Third, the defendant has the burden to show that the explanation given was merely a pretext for discrimination. *Johnson v. State*, 68 S.W.3d 644, 649 (Tex. Crim. App. 2002). It is not enough merely to show that a proffered explanation turns out to be incorrect. *Id.* A party's failure to offer any real rebuttal to a proffered race-neutral explanation can be fatal to his claim. *Id.* The trial judge rules on whether the neutral reasons given for the peremptory challenge were contrived to conceal racially discriminatory intent. *Jasper*, 61 S.W.3d at 421; *Stewart*, 176 S.W.3d at 858.

Here, the State struck venireperson Lloyd Pullman, who is black. Appellant raised a *Batson* challenge to the strike. The State offered the following race-neutral reasons for striking Pullman: he was a pastor; he appeared to be nodding off during the early stages of the judge's instructions and in the State's voir dire examination; he appeared to be much more animated

10

in his responses during the defense's voir dire; the prosecutor thought he heard Pullman saying something out loud without being called on during the defense's voir dire and saw him nodding his head vigorously in agreement; lastly, according to the prosecutor's notes, Pullman said during voir dire that "the difference in a police officer's perception versus a juror's [is] that he's not charged with enforcing the law, that that's the cop's responsibility."

After reviewing the record, we conclude that the State's race-neutral explanation for striking Pullman was adequate. In contrast, Appellant's reply that Pullman was not a "justifiable" strike was insufficient to show that the State's explanation was a pretext for discrimination. As such, Appellant failed to offer any real rebuttal to the State's race-neutral explanations and failed to show that the State's explanations were a mere pretext for discrimination. *See Johnson*, 68 S.W.3d at 649. Therefore, we hold that the trial court's ruling on Appellant's *Batson* challenge was not clearly erroneous. Accordingly, we overrule Appellant's fourth point.

### V. Article 38.23 Jury Instruction

In Appellant's second point, he complains that the trial court erred by refusing to instruct the jury pursuant to article 38.23 of the Texas Code of Criminal Procedure. That instruction would have allowed the jury to determine

11

if the stop was reasonable under the circumstances and therefore lawful.  TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005).

Article 38.23 provides that no evidence obtained in violation of state or federal laws or constitutions may be admitted into evidence against an accused at the trial of any criminal case.  *Id.*  When an issue of fact exists concerning the legality of an automobile stop, the defendant has a statutory right to an article 38.23 jury instruction, instructing the jury to disregard all illegally obtained evidence.  *Id.*  However, an article 38.23 instruction must be included in the jury charge only if there is a factual dispute about how the evidence was obtained.  *See Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004).  A fact issue about whether evidence was legally obtained may be raised from any source, and the evidence may be strong, weak, contradicted, unimpeached, or unbelievable.  *Id.*

Appellant argues that there was a factual dispute as to whether the stop was legal because Officer Cose testified on cross-examination that he followed Kirby and Appellant for approximately four minutes before stopping them, that he observed no traffic violations committed by Kirby, that he acknowledged that it was possible that Kirby could have corrected her driver's license status, that he did not know where Kirby and Appellant were going, and that they were driving a different route than when they were stopped in November.  For these

12

reasons, Appellant argues that a fact issue was raised as to the legality of the stop, and therefore article 38.23 was applicable.

We disagree. In his brief, Appellant does not contest the existence or nature of the evidence underlying Officer Cose's decision to stop Kirby. Instead, he contests whether the circumstances that Officer Cose observed actually authorized the stop. Appellant did not offer evidence that controverted Cose's testimony nor did he call a witness who could dispute the nature of the facts. *See Rose v. State*, 470 S.W.2d 198, 200 (Tex. Crim. App. 1971). Instead, he relied on Officer Cose's testimony on cross-examination as the sole means to show that there was a factual dispute regarding Cose's authority to make the stop. However, no fact dispute was created by Cose's testimony, nor did the underlying facts of the stop give rise to a dispute. Instead, only the effect of those facts was disputed. *See, e.g., Murphy v. State,* 640 S.W.2d 297, 299 (Tex. Crim. App. 1982), *rev'd on other grounds, Atkinson v. State,* 923 S.W.2d 21 (Tex. Crim. App. 1996); *Cate v. State*, 124 S.W.3d 922, 928 (Tex. App.—Amarillo 2004, pet. ref'd) (holding that because appellant merely contested whether the circumstances as they existed authorized the stop, he was not entitled to an article 38.23 instruction); *see also Bell v. State,* No. 02-04-287-CR, 2005 WL 503647, at *2 (Tex. App.—Fort Worth Mar. 3, 2005, pet. ref'd) (not designated for publication) (mem. op.).

13

We agree with the trial court that because there was no factual dispute regarding the legality of the stop, the determination of reasonable suspicion was a matter of law. We therefore hold that the trial court did not err in failing to instruct the jury on article 38.23. We overrule Appellant's second point.

## VI. "Reasonable Doubt" Jury Charge

In Appellant's sixth point, he argues that the trial court violated his federal and state constitutional rights to a fair trial by misstating the law in its jury charge concerning the definition of reasonable doubt.

Appellant objected to the following language in the charge: "It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt." The trial court overruled Appellant's objection, and this charge was submitted to the jury.

This court has addressed the propriety of such an instruction on numerous occasions and found it not to be improper. *See, e.g.*, *Pope v. State,* 161 S.W.3d 114, 125 (Tex. App.—Fort Worth 2004), *aff'd,* 207 S.W.3d 352 (2006); *Best v. State*, 118 S.W.3d 857, 865 (Tex. App.—Fort Worth 2003, no pet.) (holding that merely giving a reasonable doubt definition in a jury charge does not constitute reversible error, and the trial court did not err by submitting

14

a jury charge distinguishing reasonable doubt from possible doubt). Accordingly, we hold that the instruction given was not improper. Appellant's sixth point is overruled.

## VII. Ineffective Assistance of Counsel

In Appellant's fifth point, he argues that he did not receive a fair trial because of the ineffective assistance of his trial counsel.

### A. Standard of Review

To establish ineffective assistance of counsel, Appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms

15

at the time of the alleged error. *See Strickland*, 466 U.S. at 688-89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. We presume that defense counsel provided reasonable professional assistance and that his actions might be considered sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.*, (quoting *Thompson*, 9 S.W.3d at 813).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable. *Strickland,* 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate

focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

**B. Independent Analysis of the Cocaine**

Appellant first contends that he did not receive effective assistance of counsel because his trial counsel failed to file a motion for discovery as to the State's lab test results and failed to conduct an independent analysis of the confiscated cocaine. Appellant argues that such an analysis was critical because the State's expert witness testified that the cocaine totaled one gram, and if the amount had been less than one gram, then Appellant would have been facing a maximum punishment of two years instead of the twenty-five years to life that he actually faced.

Initially, we must note that Appellant's argument that his counsel's failure to conduct an independent investigation automatically rendered his conduct deficient is incorrect. The court of criminal appeals has clearly stated that defense counsel has a duty to make a proper investigation and prepare for trial. *Ex parte Langley,* 833 S.W.2d 141, 143 (Tex. Crim. App. 1992). However, this duty does not require defense counsel to conduct an independent investigation of the evidence. *Velasquez v. State*, 941 S.W.2d 303, 311 (Tex. App.—Corpus Christi 1997, pet. ref'd) (stating that the court was unaware of

17

any case holding that defense attorneys in drug cases are required to conduct their own analyses of substances already determined by the police laboratory to be illicit drugs). Therefore, counsel was not required to make an independent investigation in order to render effective assistance of counsel.

Although Appellant's trial counsel was not required to conduct an independent investigation of the evidence, his decision not to do so must have been reasonable under the circumstances. *See Strickland*, 466 U.S. at 688-89, 104 S. Ct. at 2065; *Thompson*, 9 S.W.3d at 813. At Appellant's January 18 hearing, trial counsel testified that he did not request an independent test of the cocaine because he did not think it was very effective to "undergo a scientific test that would in all likelihood prove the State's case."[4] Such reasoning is troublesome; if trial counsel had conducted an independent analysis and the results had demonstrated that the cocaine was more than one gram, then the State's evidence simply would have been validated, which is hardly more damaging than having conducted no testing and leaving the State's evidence uncontested. However, if the results had shown that the cocaine was *less* than

---

[4] Specifically, Adame testified that he was concerned that an independent analysis might demonstrate that the cocaine was actually more than one gram, because it was his experience that "invariably a little bit of [the cocaine would be] destroyed as part of the testing. Therefore, what [the lab technicians] typically testify to is that the amount they report on their lab report is actually less than what was submitted to them."

18

one gram, Appellant would at least have put the amount of cocaine in issue, and possibly have resulted in a maximum of two years' imprisonment.

However, despite the troubling nature of trial counsel's decision not to conduct an independent analysis, we determine that even if this decision satisfied the first prong of the *Strickland* test, Appellant must still affirmatively prove prejudice. *See Strickland*, 466 U.S. at 688-89, 104 S. Ct. at 2065; *Bates v. State*, 88 S.W.3d 724, 729 (Tex. App.—Tyler 2002, pet. ref'd). Despite Appellant's contention that an independent analysis was critical because it could have revealed that the cocaine was less than one gram, we determine that such a statement amounts to little more than a hypothetical situation with no basis in the record.[5] *See id.* We iterate that the burden of proof as to this issue rests squarely upon Appellant. *Id.*

Here, Appellant's argument is built on nothing more than retrospective speculation that the cocaine might have been less than one gram; the record does not reflect that the weight of the cocaine was ever at issue at trial. First,

---

[5] In *Bates,* the appellant argued ineffective assistance of counsel because his attorney failed to conduct an independent analysis of the substance recovered from appellant to determine if it was methamphetamine. *See Bates,* 88 S.W.3d at 729*.* The court held that appellant's statement that "[i]f the substance in question was not a controlled substance, particularly methamphetamine, Appellant could have been acquitted" was little more than a hypothetical situation with no basis in the record. *Id.* at 728-29.

19

the State's witness who conducted the analysis of the cocaine testified that the cocaine weighed exactly one gram. Appellant does not direct us to any evidence in the record that would question the amount of cocaine or indicate that the methods used to measure the cocaine were inaccurate. Further, no witnesses gave any indication that the cocaine appeared to be less than one gram. In addition, the only evidence in the record upon which Appellant could claim that the cocaine did not equal one gram was Kirby's testimony that the jacket Appellant was wearing at the time of arrest, which contained .25 grams, did not belong to Appellant, but to a friend of Kirby. However, the verdict reflects that the jury did not believe this testimony.[6]

Because Appellant has not pointed to any evidence in the record to support his hypothetical argument, we determine that he has failed to prove that he was prejudiced by his trial counsel's alleged ineffectiveness. *See Strickland*, 466 U.S. at 688-89, 104 S. Ct. at 2065; *Bates*, 88 S.W.3d at 729.

---

[6] The prosecution and defense agreed that a lesser included offense instruction should be included within the jury instructions. The instruction permitted the jury to find Appellant guilty of the lesser offense if they concluded that he "did then and there intentionally or knowingly possess a controlled substance, to-wit: cocaine, in the amount of one (1) gram or more but less than four (4) grams by aggregate weight including any adulterants or dilutants. . . ."

20

## C. Independent Analysis of the Videotape

Appellant next argues that his trial counsel was ineffective for failing to conduct an independent analysis of the videotape evidence offered at trial. Despite Appellant's contention that he "made some observations that such tampering could have occurred and should have been investigated," Appellant has not pointed to evidence in the record to show that his trial counsel's decision was not reasonable under the circumstances. In contrast, the record shows that there was nothing suspicious about the videotape that would have made trial counsel Adame believe that the videotape had been compromised. Specifically, Adame testified that he did not think that the videotape had been compromised. Thus, his decision not to conduct an independent analysis was not unreasonable under the circumstances.

Moreover, Appellant was unable to show that there was a reasonable probability that, but for his counsel's failure to conduct an independent analysis of the videotape, the result of the proceeding would have been different. *Strickland,* U.S. at 694, 104 S. Ct. at 2068. We have determined that there was no support in the record for Appellant's speculation that the videotape was tampered with or that an altered videotape would have changed the outcome of the case. Again, Appellant has not demonstrated that his counsel provided

21

deficient performance or that counsel's alleged errors prejudiced his defense. *See id.* at 687, 104 S. Ct. at 2064.

## D. Failure to Procure Two Corroborating Witnesses

Finally, Appellant argues that his trial counsel was ineffective because he failed to produce two witnesses who could have corroborated Kirby's testimony that Appellant did not know about the drugs in the car. According to Appellant, his trial counsel failed to call Audra Lasley, whose testimony could have corroborated Kirby's testimony that she and Lasley were doing crack together in the car on the day that Kirby and Appellant were arrested. Appellant also asserts that trial counsel failed to call Marshall Flores to testify about incriminating statements Kirby made to him regarding the cocaine being hers and not Appellant's. Specifically, Flores was to testify that when he picked Kirby up from jail following her and Appellant's arrests, Kirby told him, "My baby is going to take my charges for me," and that it was Flores' understanding that "my baby" was Appellant and that he was going to take responsibility for the drugs that were seized in the arrest.

Again, we determine that Appellant has failed to overcome the presumption that his trial counsel's actions were reasonable under the circumstances. *Id.* The record shows that Appellant's trial counsel actually

subpoenaed both witnesses and made substantial efforts to ensure that they appeared for trial. The record also shows that when Appellant's counsel was unable to locate Lasley to testify, he made an offer of proof of what her testimony would be if she had been present, as well as the efforts he made to secure her presence before the court. The record shows that counsel went to extensive efforts to procure Lasley's presence at trial. We conclude that nothing in the record indicates that trial counsel failed to produce the two witnesses as Appellant alleges.

Furthermore, Adame testified that he felt it was the best decision not to call Flores because "he suddenly did not remember having made that statement to me" and that "he didn't remember what [Kirby] had said." Adame believed that Flores's testimony was potentially damaging to Appellant's case, and therefore felt that it was the "best decision not to call him." Moreover, Adame testified that he discussed the situation with Appellant, and that they made the joint decision not to call Flores to testify.

After evaluating each of Appellant's grounds for his complaint that he did not receive a fair trial because of trial counsel's ineffective assistance, we hold that Appellant has not met his burden of proving ineffective assistance of counsel. We therefore overrule Appellant's fifth point.

23

## VIII. Sufficiency of the Evidence

In Appellant's seventh point, he argues that the evidence was insufficient to show that he unlawfully possessed a controlled substance because the State failed to prove that he exercised care, custody, and control over the .75 grams of cocaine found on the seat, floorboard, and ground.[7]

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Hampton v. State*, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

To prove unlawful possession of a controlled substance, the State must prove that (1) the accused exercised control, management, or care over the substance and (2) the accused knew the matter possessed was contraband. Whether this evidence is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. This is the whole of the so-called 'affirmative links'

---

[7] Appellant does not contest the sufficiency of the evidence with regard to the .25 grams of cocaine that were found in a pill bottle in the pocket of the jacket he was wearing.

rule." *Poindexter v. State*, 153 S.W.3d 402, 405-06 (Tex. Crim. App. 2005). When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances that affirmatively link the accused to the contraband. *Id.* at 406. Factors we consider include (1) the defendant's presence when the search occurred, (2) whether the contraband was in plain view, (3) the defendant's proximity to and the accessibility of the narcotic, (4) whether the defendant was under the influence of narcotics when arrested, (5) whether the defendant possessed other contraband or narcotics when arrested, (6) whether the defendant made incriminating statements when arrested, (7) whether the defendant attempted to flee, (8) whether the defendant made furtive gestures, (9) whether there was an odor of the contraband, (10) whether other contraband or drug paraphernalia were present, (11) whether the defendant owned or had the right to possess the place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) whether the accused was the driver of the automobile in which the contraband was found, (14) whether the defendant was found with a large amount of cash, and (15) whether the conduct of the accused indicated a consciousness of guilt. *See Tucker v. State,* 183 S.W.3d 501, 510 (Tex. App.—Fort Worth 2005, no pet.).

It is not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial. *See Evans v. State,* 202 S.W.3d 158, 162 (Tex. Crim. App. 2006).

The State argues that the sum total of the evidence is sufficient to establish that Appellant exercised the requisite level care, custody, and control of the .75 grams of cocaine that had been in the passenger's seat. We agree.

Appellant was present when the car was stopped and the cocaine was discovered. In fact, Appellant was the closest individual to the cocaine, as he apparently had been sitting on it at one point. Thus, Appellant was in close proximity to the cocaine and it was clearly accessible to him. The cocaine was also in plain view. Officer Martin saw cocaine "rocks" on the seat and floorboard of the car and intermingled with gravel on the road. There was also evidence that Appellant was in possession of other narcotics that night as well. Officer Cose discovered a pill bottle containing cocaine in the pocket of the jacket Appellant was wearing. In addition, Appellant made furtive gestures and indicated a consciousness of guilt when he leaned into the car and began to sweep the cocaine out of the seat. Officer Martin testified that he personally witnessed Appellant trying to sweep the cocaine out of the seat and onto the

ground, and he stated that Appellant "demonstrated his possession of [the cocaine] by exerting force over that object and trying to place it on the ground."

We conclude that the combined pieces of evidence coupled with reasonable inferences from the evidence are sufficient to establish that Appellant exercised actual care, custody, control, or management of the cocaine on the seat, floorboard, and ground. Therefore, we overrule Appellant's seventh point.

## IX. Motion for New Trial

In Appellant's third point, he argues that the trial court violated his federal and state constitutional rights to a fair trial by improperly denying his motion for a new trial. In particular, Appellant argues that the trial court's action to time bar him from having his motion heard was a "procedural default" that deprived Appellant from receiving a fair trial because the trial court allowed the motion for new trial to proceed on matters other than his ineffective assistance of counsel claims.

Because Appellant has now had a hearing on his ineffective assistance of counsel claims and because the record shows that he had already had a hearing on his remaining claims, we overrule his third point as moot.

27

## X. Conclusion

Having overruled each of Appellant's seven points, we affirm the trial court's judgment.

PER CURIAM

PANEL F:   MCCOY, J.; CAYCE, C.J.; and LIVINGSTON, J.

LIVINGSTON, J. dissents without opinion.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED: March 20, 2008

28